Harry **BIRKENFIELD**, Appellant,

v.

**UNITED STATES** of America and Orville Freeman, Secretary of Agriculture.

No. 16009.

United States Court of Appeals Third Circuit.

Argued Sept. 12, 1966.

Decided Nov. 10, 1966.

Harvey A. Miller, Jr., Pittsburgh, Pa. (Miller & Miller, Pittsburgh, Pa., on the brief), for appellant.

Morton Hollander, Chief, Appellate Section, U. S. Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Gustave Diamond, U. S. Atty., Jack H. Weiner, Attorney, Department of Justice, Washington, D. C., on the brief), for appellees.

Before STALEY, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

## OPINION OF THE COURT

STALEY, Chief Judge.

Appellant, Harry Birkenfield, has brought this suit to enjoin the Secretary of Agriculture and his agents from interfering with appellant's employment in the field of marketing perishable agricultural commodities. The issue presented is whether the Secretary's actions, undertaken without providing the appellant a trial-type hearing, violated appellant's right to due process. The district court granted summary judgment for the defendants and we affirm.

The complained-of actions arise out of proceedings against the Fort Pitt Tomato & Produce Co., Inc. (hereinafter referred to as "Fort Pitt"), a licensed commission merchant, dealer and broker under the Perishable Agricultural Commodities Act of 1930 (hereinafter referred to as "P.A.C.A."), 46 Stat. 531, as amended, 7 U.S.C. § 499a et seq. Certain sellers complained to the Secretary of Agriculture that Fort Pitt had not paid for shipments of potatoes and onions received during the summer of 1965. Under P.A.C.A. § 6, 7 U.S.C. § 499f, the Secretary initiated reparation proceedings against Fort Pitt. However, Fort Pitt did not answer the complaints and default orders were subsequently issued. Fort Pitt went into receivership in October, 1965, and did not appeal or pay the reparation awards.

Appellant Birkenfield had been treasurer and a member of the board of directors of Fort Pitt, and had owned more than 10 per cent of the company's outstanding shares of stock. After the initiation of the reparation proceedings, Birkenfield became concerned about the effect on him of a possible finding that Fort Pitt had violated the P.A.C.A., for under the Act

"(b) Except with the approval of the Secretary, no licensee shall employ any person, or *any person who is or has been responsibly connected with any person*—

\* \* \* \* \*

(2) who has been found after notice and opportunity for hearing to have committed any flagrant or repeated violation of section 499b \* \* \* or

(3) *against whom there is an unpaid reparation award* issued within two years subject to his right of appeal under section 499g(c) of this title." P.A.C.A. § 8, 7 U.S.C. § 499h(b). (Emphasis supplied.)

The Act defines "person" to include "individuals, partnerships, corporations, and associations." P.A.C.A. § 1, 7 U.S.C. § 499a(1). Therefore, if Birkenfield were "responsibly connected" with Fort Pitt, upon the company's failure to pay any reparation award, Birkenfield could not be employed by another licensee under the P.A.C.A. for a minimum of two years without the approval of the Secretary of Agriculture and the posting of a bond in an amount satisfactory to the Secretary. P.A.C.A. § 8, 7 U.S.C. § 499h(b).

Appellant communicated with officials of the Department of Agriculture's Consumer Marketing Service and was informed that the Department would consider him "responsibly connected" with Fort Pitt should the latter fail to pay the reparation awards. The Department explained to him that this would necessarily follow because the Act provides that

"When used in this chapter—

\* \* \* \* \*

"(9) The term 'responsibly connected' means affiliated or connected with a commission merchant, dealer, or

broker as * * * (B) officer, director, or holder of more than 10 per-centum of the outstanding stock of a corporation or association." P.A.C.A. § 1, as amended 7 U.S.C. § 499a(9).

When Fort Pitt failed to defend the first reparation complaint and a default order was entered, a copy of the order was served on Birkenfield and he was again advised, by letter, of the effect on his employment opportunities of Fort Pitt's failure to pay. Before the reparation award became final, Birkenfield, through counsel, talked with Department of Agriculture officials and stated that he could prove that he was not in fact "responsibly connected" with Fort Pitt. However, the material submitted in due course to the Department did not con-trovert the facts that Birkenfield was an officer, director and significant shareholder—the three criteria of "responsibly connected" under the Act. The thrust of Birkenfield's contention before the Department, as well as in the dis-trict court, was that he was only nomi-nally such an official or shareholder, and that actual authority was vested in oth-ers. The Department of Agriculture in-formed appellant's counsel that it con-sidered the appellant to be "responsibly connected within the meaning of the Act."

When the default reparation order be-came final, with no appeal having been taken or payment made, the Department of Agriculture issued a press release pur-suant to P.A.C.A. § 8(a), 7 U.S.C. § 499h (a), and 7 C.F.R. 46.36 (Supp. 1966). The release stated that Fort Pitt had failed to pay a reparation award issued under the Act; that the company and its officers, directors, or stockholders, in-cluding Harry Birkenfield, were not en-titled to conduct business subject to the Act until the award was satisfied; and that these individuals could not be em-ployed by another P.A.C.A. licensee with-out the Department's approval.

Appellant sought employment with certain licensees. The Department in-formed these persons by letter and by telephone of the conditions under which appellant could be employed, including the necessity for the Secretary's approv-al and the posting of satisfactory bond. Moreover, the Department stated to at least one licensee that the Department had initiated disciplinary action against Fort Pitt for "repeated and flagrant" violations of the Act, and that under a finding adverse to Fort Pitt, Birken-field "will become ineligible for employ-ment with a licensee, with or without bond, for a period of one year following the effective date of such disciplinary order." This licensee was also informed that "To employ Mr. Birkenfield with-out having posted an acceptable bond and obtaining approval of his employment may result in the suspension or revoca-tion of your license." Appellant then brought this action in the district court.

Defendants moved in the district court for dismissal or for summary judgment and appellant filed a cross motion for summary judgment. On briefs and oral argument, the district court granted judgment for the defendants. The rec-ord of the proceeding indicates the court considered the administrative actions of the Secretary as merely undesirable pub-licity given out in the course of official business rather than sanctions, and indi-cated that in its view there was no real administrative action taken by the Sec-retary which called for the application of the Administrative Procedure Act or for judicial review. The court did recog-nize that "of course, as a practical mat-ter, why, doubtless, nobody would wish to employ him if they knew they were risking proceedings brought by the Sec-retary."

■■ It is abundantly clear that the government may not arbitrarily deny an individual the opportunity to engage in a chosen private profession. Greene v. McElroy, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Schware v. Board of Bar Examiners, 353 U.S. 232, 238–239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). Due process demands that an individual whose livelihood is threat-ened by administrative action be given notice and a hearing to fairly rebut the

evidence against him. Particularly should this be so in cases where the action of the administrative body, as the regulator of qualifications for an entire field of private employment, may entirely foreclose an individual from employment opportunities. It is likewise clear that the defendants are in error when they argue in their brief that no hearing is ever required in actions under the P.A.C.A. because that Act does not specifically require the Secretary to conduct one. The Act itself requires a hearing in some cases. P.A.C.A. § 4, 7 U.S.C. § 499d(b) (B) and § 499d(d); P.A.C.A. § 6, 7 U.S.C. § 499f(c); P.A.C.A. § 8, 7 U.S.C. § 499h(c). These generalizations, however, do not resolve the particular problem before us.

The failure to provide Birkenfield a trial-type hearing did not violate due process because there were no material issues of fact in dispute before the Department of Agriculture. From the time when the proceedings against Fort Pitt started, Birkenfield was aware of the statute and the sanctions which would follow should be he found "responsibly connected" with Fort Pitt. However, appellant, in his discussions and appeals to the Department officials, did not deny that he was an officer, director, and holder of more than 10 per cent of Fort Pitt's outstanding shares. Birkenfield's position has been solely that although he did hold these positions, and the portion of the stock, he never had real responsibility in Fort Pitt's affairs. Under the circumstances, no trial-type hearing was required because only an issue of law was presented. Cf. Mississippi River Fuel Corp. v. F.P.C., 108 U.S.App.D.C. 284, 281 F.2d 919, 927 (1960).

■■ The history of the Perishable Agricultural Commodities Act makes it clear that the Department was correct in interpreting the statute as rejecting defenses such as those proffered by Birkenfield. The object of the Act is to suppress unfair and fraudulent practices in the industry. Enacted in 1930, the Act is regarded today as one of the government's most successful regulatory programs, and the Act has received enthusiastic support from members of the regulated industry. However, one of the weak spots in the administration of the P.A.C.A. has been the exclusion of persons who individually, or in conjunction with others, have violated the Act's provisions. To correct this problem, Congress amended the Act in 1962, inter alia, defining "responsibly connected" in the present manner. The House Report indicates that the amendment was made to clarify the Act:

"* * * At present the act applies only to the employment of a person in a responsible position. This has caused serious difficulties due to the problem of delineating what constitutes a responsible position under all circumstances and the difficulty of ascertaining the true nature of the employee's relationship with the licensee." 2 U.S.Code & Adm.News, 87th Cong., 2d Sess. 1962, pp. 2749, 2755.

Obviously, as interpreted by the Department, the 1962 amendment was intended to establish "per se" exclusionary standards to ease the Department's burden in these cases. We agree with the Department that Birkenfield's proffered defense was not sufficient as a matter of law under the amended P.A.C.A.

■ We do not agree with the appellant's characterization of the amended P.A.C.A. as "unconstitutional." The automatic exclusion of "responsibly connected" persons is not irrational or arbitrary under the circumstances. Surely, the relationships of director, officer or substantial shareholder form a sufficient nexus for the arbitrary conclusion of responsible connection. Moreover, the formation of such relationships with the sanctioned company is a voluntary act. The fact that an individual has not exercised "real" authority in the sanctioned company is not controlling: certainly the individual could have resigned as an officer and director and disposed of his

stock. It was his free choice not to do so. Having made that choice, the appellant assumed the burdens imposed by the Act.

The judgment of the district court will be affirmed.