732 F.2d 1462
 21 ERC 1134, 14 Envtl. L. Rep. 20,522
 COUNTY OF DEL NORTE, et al., Plaintiffs-Appellees,
v.
UNITED STATES of America, et al., Defendants-Appellants.
ASSOCIATION OF CALIFORNIA WATER AGENCIES, et al., Plaintiffs-Appellees,
v.
UNITED STATES of America, et al., Defendants-Appellants.
Environmental Defense Fund, et al., Intervenors-Appellants,
Cross-Appellees.
 Nos. 83-1761, 83-2018, 83-1770 and 83-2019.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 16, 1983.
Decided May 11, 1984.
 
 Andrew Pincus, Hughes, Hubbard & Reed, Washington, D.C., Alson R. Kemp, Jr., James L. Warren, Mauricio A. Pillsbury, Madison & Sutro, San Francisco, Cal., Edward J. Tiedemann, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, Cal., for plaintiffs-appellees.
 Brian E. Gray, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., Jacques B. Gelin, Dept. of Justice, Washington, D.C., Patricia L. Wells, Environmental Defense Fund, Boulder, Colo., for defendants-appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, SCHROEDER, and FARRIS, Circuit Judges.
 SCHROEDER, Circuit Judge.
 
 
 1
 This is a challenge to the Secretary of the Interior's designation of parts of five northern California rivers as components of the national wild and scenic river system under the Wild and Scenic Rivers Act, 16 U.S.C. Secs. 1271-1287 (1982). Plaintiffs include several California counties and entities that represent timber and water interests. The district court entered summary judgment in favor of the plaintiffs, holding that the designation was defective because of procedural irregularities. The government appeals.
 
 
 2
 Secretary of the Interior Cecil Andrus designated the rivers in January, 1981, during the waning hours of the Carter administration. As required by the National Environmental Policy Act (NEPA), 42 U.S.C. Secs. 4321-4347 (1976 & Supp. V 1981), the designation followed completion of an Environmental Impact Statement (EIS). 42 U.S.C. Sec. 4332. It is apparent from the record that the State of California, which originally proposed the designation, and the Heritage Conservation and Recreation Service (HCRS), the Department of the Interior division which processed the application,[1] favored expeditious completion of all NEPA requirements so that action could be taken on the proposal before the Carter administration left office. It is equally apparent that those opposing designation, including the plaintiffs in this case, wished to delay final consideration by the Secretary until the new President took office.
 
 
 3
 The principal issue before us is whether the designation is invalid because the HCRS failed to follow two EIS timing regulations, 40 C.F.R. Secs. 1506.9 and 1506.10. The HCRS circulated copies of the EIS to commenting agencies and made copies available to the public on the same day as publication in the Federal Register of notice that the EIS had been filed with the Environmental Protection Agency (EPA). Applicable NEPA regulations call for notice in the Federal Register during the week following filing, rather than the same week. We conclude that any violation of these regulations must be regarded as insignificant and within the scope of another portion of the same series of regulations which provides that trivial violations shall not form the basis for independent causes of action. 40 C.F.R. Sec. 1500.3 (1983). The deviation from requirements of the regulations here did not justify judicial invalidation of the designation. We therefore reverse.
 
 
 4
 Resolution of the legal issue requires an understanding of the relationship between two of the regulations promulgated by the Council on Environmental Quality (CEQ) to ensure substantial compliance with the policies set forth in NEPA. The first regulation, 40 C.F.R. Sec. 1506.9 (1983), requires that EISs be filed with EPA. It also provides that an EIS should not be filed with EPA before it is transmitted to commenting agencies and made available to the public.[2] The second regulation, 40 C.F.R. Sec. 1506.10 (1983), requires published notice in the Federal Register of the filing of an EIS that has been "filed [with EPA] during the preceding week." 40 C.F.R. Sec. 1506.10(a). It provides that no decision on the proposed action may be made until at least 30 days after Federal Register publication. 40 C.F.R. Sec. 1506.10(b)(2).[3]
 
 
 5
 The precise sequence of events at issue began on December 12, 1980. On that date the Department of the Interior filed with EPA the final EIS on the proposed designation. Upon filing the EIS, an agency official signed a form affidavit provided by EPA confirming that the statement was available for inspection by the public and had been circulated to interested agencies. In fact, on December 12, the statement was available only on a very limited basis and had not yet been sent to the agencies.
 
 
 6
 By the following Wednesday, December 17, however, when the notice of filing was published, circulation to agencies had been completed and copies were available in quantity to the public. Plaintiffs actually received copies on this date. Secretary Andrus made the designation of the rivers on January 19, 1981, 33 days after the notice had been published.
 
 
 7
 The sequence can be better visualized by use of the following time line:
 
 
 8
 July 18, 1980: Governor of California proposes inclusion of rivers in the wild and scenic river system.
 
 
 9
 September 16, 1980: Draft EIS filed with EPA.
 
 
 10
 November 5, 1980: Presidential election.
 
 
 11
 November 14, 1980: Some plaintiffs obtain temporary restraining order, extending comment period on the draft EIS.
 
 
 12
 December 1, 1980: Temporary restraining order dissolved for lack of jurisdiction.
 
 
 13
 December 5, 1980: Comment period on draft EIS is closed.
 
 
 14
 Friday, December 12, 1980: HCRS official files final EIS and signs form verifying that distribution has been completed. Copies of the final EIS are available at agency offices in San Francisco and Washington, D.C.
 
 
 15
 Monday, December 15, 1980: Distribution of final EIS by mail is completed.
 
 
 16
 Wednesday, December 17, 1980: Final EIS is available in quantity to the public. Plaintiffs' counsel obtain copies. Federal Register publishes notice that the final EIS has been filed with EPA.
 
 
 17
 January 19, 1981: Secretary of the Interior makes the designation.
 
 
 18
 The time line illustrates several important facts. First, the agency followed all timing requirements for preparation of the EIS itself. In fact, the comment period on the draft EIS lasted substantially longer than the minimum 45 days required by 40 C.F.R. Sec. 1506.10(c). Second, the notice in the Federal Register, which signified filing with EPA, availability to the public, and circulation to commenting agencies of the EIS, did so accurately when it appeared on December 17. Finally, when the Secretary designated the rivers on January 19, more than the required 30 days following publication had passed. 40 C.F.R. Sec. 1506.10(b)(2).
 
 
 19
 The irregularity in filing the notice before circulation therefore had no effect whatsoever on the plaintiffs' opportunity to review the EIS after publication of the notice; nor did it affect the opportunity of the interested agencies and members of the public to review the statement for 30 days following publication. The "premature" publication about which the plaintiffs complain is significant only because delay of a week in publication would have prevented the matter from being decided by Secretary Andrus rather than by his successor. It was, however, in large part the actions of these plaintiffs, in obtaining a temporary restraining order in November, 1980, that made the "prematurity" significant. The order delayed approval of the EIS for seventeen days before the district court dissolved it for lack of jurisdiction.
 
 
 20
 These facts are important to bear in mind in evaluating plaintiffs' claim that the designation should be set aside because of the deviation from the sequence of distribution and filing called for in the CEQ regulations. The regulations in question are part of a series issued under the authority of NEPA to establish orderly procedures for administration of the Act. See National Environmental Policy Act--Regulations: Supplementary Information, 43 Fed.Reg. 55,978 (1978). Section 1500.1, which sets forth the purpose of the regulations, emphasizes that the procedures "must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken." 40 C.F.R. Sec. 1500.1(b).
 
 
 21
 Section 1500.3 of the regulations states that compliance with them should not be subject to judicial review until after final action on the proposal, and that the Council intended that "any trivial violation of these regulations not give rise to any independent cause of action." 40 C.F.R. Sec. 1500.3. The Council's discussion of the regulations in the Federal Register during their drafting makes the purpose and history of the latter provision more explicit. Several comments had reflected concern that litigation over "trivial departures from the requirements established by the Council's regulations" could result in judicial invalidation of agency actions. Stating that "[t]his is not the Council's intention," the CEQ added a sentence to the final version "to indicate the Council's intention that a trivial departure from the regulations not give rise to an independent cause of action under law." National Environmental Policy Act--Regulations: Comments and the Council's Response, 43 Fed.Reg. 55,981 (1978).
 
 
 22
 The regulations themselves thus contain an implicit admonition not to use claims of technical violations as tactics for delaying agency action. Any violation which in the end requires the agency action to be set aside must have borne some relationship to the decision making process itself.
 
 
 23
 The question in this case then becomes whether the violation of the regulations, by publishing notice in the Federal Register on the day circulation of the EIS was complete rather than during the following week, is "trivial." The purpose of 40 C.F.R. Secs. 1506.9 and 1506.10 is to ensure that all pertinent information is available on proposed action for a period of 30 days before final action is taken, and that interested parties have notice of that availability. This 30-day period is not for the purpose of additional public comment and review, California v. Block, 690 F.2d 753, 771 (9th Cir.1982), but, in the words of one commentator, is "to allow a sufficient review period for the final statement and comments and views of commenting agencies 'to accompany the proposal through the existing agency review process.' " 2 F. Grad, Treatise on Environmental Law Sec. 9.02 at 9-113 (1980) (quoting 42 U.S.C. Sec. 4332(2)(C)). The provision for publication the week following distribution and filing of the EIS is no more than a precautionary measure to ensure the desired result.
 
 
 24
 Here, although the HCRS failed to take the precaution, the result was achieved in any event. All distribution requirements had been met by the time of publication: the required 30 days did elapse; the EIS materials were available and accompanied the EIS through the final review process during the 30-day period. The integrity of the decision making process within the government and the public's opportunity to comment in accordance with all legal requirements were not compromised in any way.
 
 
 25
 Although this is a case of first impression under these regulations, the trivial error provision is analogous to the general rule that insubstantial errors in an administrative proceeding that prejudice no one do not require administrative decisions to be set aside. 5 U.S.C. Sec. 706 (1982). See, e.g., Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978) ("single alleged oversight on a peripheral issue ... must not be made the basis for overturning a decision properly made after an otherwise exhaustive proceeding"); Small Refiner Lead Phase-Down Task Force v. United States Environmental Protection Agency, 705 F.2d 506, 549 (D.C.Cir.1983) (even if agency fails to give notice in statutorily prescribed manner, actual notice renders error harmless); Warm Springs Dam Task Force v. Gribble, 621 F.2d 1017, 1022-23 (9th Cir.1980) (where failure to obtain comments from an agency under NEPA caused no prejudice, dam project would not be enjoined); Consolidated Gas Supply Corp. v. Federal Energy Regulatory Commission, 606 F.2d 323, 328-29 (D.C.Cir.1979), cert. denied, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980) (agency decision will not be overturned based on technical error if the agency would have reached the same decision absent the error); Greater Boston Television Corp. v. Federal Communications Commission, 444 F.2d 841, 851 (D.C.Cir.), cert. denied, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971) (supervisory function of the court requires it to intervene when the agency has not taken a "hard look" at issues, but court will not upset a decision because of errors that are not material). The district court relied upon Buschmann v. Schweiker, 676 F.2d 352 (9th Cir.1982), in which the court refused to excuse for lack of prejudice an agency's failure to follow regulations. In Buschmann, however, the error was prejudicial to the plaintiffs and the review process because plaintiffs were denied notice and the opportunity to comment on a proposed agency rule.
 
 
 26
 While we conclude that no violation of the law occurred that was sufficient to undermine the validity of the designation, we are both mindful and respectful of the district court's concern about the HCRS staff member's false declaration, when he filed the notice with EPA, that circulation requirements already had been met. The district court was of the view that the false statement itself was a blemish on the decision making process. There was, however, neither evidence nor any finding of bad faith in connection with the declaration. On appeal, plaintiffs properly have refrained from arguing that the falsity of the declaration has any independent significance.
 
 
 27
 Plaintiffs argued strenuously before the district court that the Secretary in making the designation had failed to consider language from a California Superior Court opinion in a suit by many of these same plaintiffs to enjoin the California Governor from applying for federal designation of the rivers. County of Del Norte v. Brown, No. 292019 (Cal.Super.Ct. Sacramento Cty. 1980) (memorandum decision). The state court held that it had no power to prevent the application for wild and scenic river status under federal law. The court admonished, however, that in deciding on the designation the Secretary must take into account the state court's conclusion that the rivers could not be "permanently administered" under the California Wild and Scenic Rivers Act, Cal.Pub.Res.Code Sec. 5093.50-5093.69 (Cum.Supp.1984). The state's ability to "permanently administer" the rivers under state law is a requirement for the federal designation at issue here. 16 U.S.C. Sec. 1273(a)(ii). The district court found that the admonition had not been drawn to the Secretary's attention and remanded to the agency under Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) ("court must consider whether the decision was based on a consideration of the relevant factors").
 
 
 28
 Full review of the record reveals, however, that the decision was both paraphrased in a memorandum to the Secretary and attached in full as an addendum to that memorandum. The Secretarial Issue Document noted the state court opinion, but concluded that sufficient other state law protections existed to satisfy the permanent administration requirement under the federal act. The record thus belies the contention that the state court opinion was not considered. In the absence of clear evidence to the contrary, courts presume that public officers properly discharge their duties, including reading memoranda addressed to them. See 3 K. Davis, Administrative Law Treatise Sec. 17.6 (2d ed. 1980) (quoting United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15, 47 S.Ct. 1, 6-7, 71 L.Ed. 131 (1926)).
 
 
 29
 Also disputed before the trial court was the question of standing. It is now apparent that at least some of the plaintiffs had standing, and we need not discuss the government's arguments that the entire case should have been dismissed for lack of it. See California v. Block, 690 F.2d at 776 (governmental entities have standing if they are nearby the proposed action site geographically and are among the entities consulted during the EIS process; citing 42 U.S.C. Sec. 4332(2)(C)).
 
 
 30
 The judgment of the district court is reversed and the matter is remanded for entry of judgment in favor of the defendants.
 
 
 
 [1]
 The functions of the HCRS are now performed by the National Park Service. 46 Fed.Reg. 34,329 (1981)
 
 
 [2]
 40 C.F.R. Sec. 1506.9 (1983) states, in relevant part:
 Environmental impact statements together with comments and responses shall be filed with the Environmental Protection Agency .... Statements shall be filed with EPA no earlier than they are also transmitted to commenting agencies and made available to the public.
 
 
 [3]
 40 C.F.R. Sec. 1506.10 (1983) states:
 (a) The Environmental Protection Agency shall publish a notice in the FEDERAL REGISTER each week of the environmental impact statements filed during the preceding week. The minimum time periods set forth in this section shall be calculated from the date of publication of this notice.
 (b) No decision on the proposed action shall be made or recorded ... by a Federal agency until ...
 * * *
 (2) Thirty (30) days after publication of the notice described above in paragraph (a) of this section for a final environmental impact statement.