755 F.2d 638
 Salvatore PUPILLO, Petitioner,
v.
UNITED STATES of America, and United States Department of
Agriculture, Agricultural Marketing Service, and
John R. Block, Secretary of Agriculture
of the United States, Respondents.
 No. 84-1666.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 12, 1984.
Decided Feb. 22, 1985.
 
 Le Roy W. Gudgeon, Northfield, Ill., for appellant.
 W. Scott Burke, Dept. of Agriculture, Washington, D.C., for appellee.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge and BRIGHT, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Petitioner Salvatore Pupillo appeals from the decision of the United States Department of Agriculture ("USDA") to impose a sanction on him under the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. Secs. 499a-499s (1976 & Supp. V 1981) ("PACA" or "the Act"). The sanction, which bars Pupillo from working for a licensee under the Act for at least one year, was based on USDA's finding that Pupillo was "responsibly connected" with the Friedmeyer Produce Co., Inc. ("Friedmeyer"), which itself was found to have violated the Act. Pupillo contends on appeal that the USDA erred in finding him responsibly connected with Friedmeyer. We reject Pupillo's contention and affirm the imposition of the sanction.I. Background
 
 
 2
 Salvatore Pupillo began working as a common laborer for Friedmeyer Fruit and Produce Company, a wholesale produce business, in late 1976, when it was a sole proprietorship of Clarence Friedmeyer's. His brother, Vincent Pupillo, had been working at the company more than a year before Salvatore started work. The company was reorganized in 1978 as Friedmeyer Produce Co., Inc., with Vincent Pupillo as president and treasurer, and Salvatore Pupillo as vice-president and secretary. Vincent put up his home as collateral to obtain a loan to purchase Mr. Friedmeyer's interest in the company.
 
 
 3
 The USDA filed a complaint initiating disciplinary proceedings against Friedmeyer in March 1982. The complaint charged Friedmeyer with violating PACA during the period from September 1979 through May 1981 by accepting consignments of perishable agricultural commodities, selling the products, and failing to account fully and promptly for the sales; and by purchasing perishable agricultural commodities and failing to make full payment promptly of the agreed purchase prices. On December 15, 1982, a USDA Administrative Law Judge issued a decision and order finding that Friedmeyer had committed willful, repeated, and flagrant violations of section 2 of the Act, 7 U.S.C. Sec. 499b(4).[1]
 
 
 4
 Under PACA, the Secretary of Agriculture has the power to prohibit employment within the perishable agricultural commodities industry of those who are "responsibly connected" with violators of the Act.[2] "Responsibly connected" is defined as "affiliated or connected with a commission merchant, dealer, or broker as ... officer, director, or holder of more than 10 percentum of the outstanding stock of a corporation or association."[3] Accordingly, in March 1982, J.J. Gardner, Chief, Regulatory Branch, Fruit and Vegetable Division of the Agricultural Marketing Service (AMS) wrote Pupillo informing him of the disciplinary proceedings against Friedmeyer. The letter stated that because USDA records showed Pupillo to be "an officer, or director, or owner of more than 10%" of Friedmeyer's stock, he was deemed to be responsibly connected with the corporation. Chief Gardner instructed Pupillo to state in writing any basis he might have for contending he was not responsibly connected with Friedmeyer. Pupillo replied by letter that he was "not an officer in Friedmeyer ... and have not been since July 15, 1980." He further stated that he had informed PACA in July 1980 that he no longer owned stock or was an officer of Friedmeyer. He enclosed minutes from a corporate meeting of July 15, 1980, showing his resignation as vice-president.
 
 
 5
 In November 1982, Chief Gardner wrote Pupillo again, stating his conclusion that Pupillo had been responsibly connected with Friedmeyer during the relevant period of Friedmeyer's PACA violations. In support of this conclusion Chief Gardner cited the corporate records showing that Pupillo did not resign his office until July 1980, and Friedmeyer's listing of Pupillo as its vice-president, treasurer, and director on its application to renew its license under PACA.
 
 
 6
 In January 1983 Pupillo petitioned USDA for review of Chief Gardner's determination that he was responsibly connected with Friedmeyer. Pupillo contended that he was not treasurer of Friedmeyer, and that he had only nominally served as director, vice-president, and secretary, lacking any power or control in the management of the corporation. An evidentiary hearing was held on May 24, 1983 to determine whether Pupillo had been responsibly connected with Friedmeyer during the relevant period. The Presiding Officer, Harry L. Williams, concluded that Pupillo had been responsibly connected with Friedmeyer. The Presiding Officer based his determination on many factors. First, Friedmeyer's 1978 PACA renewal application listed Pupillo as an owner, vice-president, treasurer, and director of the firm.[4] Second, corporate minutes from May 2, 1978 showed that Pupillo was appointed director of the firm, and was elected vice-president and secretary. The minutes were signed by Pupillo as secretary and director. Next, the corporation's stock book contained a stock certificate for two shares of stock registered in Pupillo's name, dated July 20, 1978, and signed by Pupillo as secretary and his brother Vincent as president. The two shares constituted 50 percent of the outstanding stock of the firm. The stock book notes that the certificate was surrendered July 1, 1980. Vincent Pupillo had written the word "cancelled" on the certificate, but could not recall when he wrote it.
 
 
 7
 Other evidence supporting the Presiding Officer's conclusion that Salvatore Pupillo was responsibly connected with Friedmeyer included minutes from a Board of Directors meeting, at which the Board approved the corporation's taking out a loan to buy out Mr. Friedmeyer's interest. The minutes were signed by Pupillo as secretary and as a director. Also, a Statement of Change of Registered Agent filed by Friedmeyer with the Missouri State Corporate Division was signed by Pupillo as the firm secretary. A notarized annual registration report filed with the same agency listed Pupillo as vice-president, secretary, and director. The Presiding Officer further noted that Pupillo was in charge of the employees on the night shift, and that the record reflected that Pupillo was fully aware of the corporation's growing financial difficulties.
 
 
 8
 Pupillo appealed the Presiding Officer's determination that he was responsibly connected with Friedmeyer to the Administrator of AMS. The Administrator affirmed the Presiding Officer's decision in a final order issued on March 27, 1984. Pupillo now appeals to this court.
 
 A. Pupillo's Contentions on Appeal
 
 9
 On appeal Pupillo argues, as he did before the Presiding Officer at the AMS hearing, that he was not responsibly connected with Friedmeyer at any time. He attacks the Presiding Officer's finding that he was so connected on two main grounds: first, that his positions as corporate secretary, vice-president, and director were in fact illusory, as was his purported ownership of 50 percent of Friedmeyer's stock; and second, that Friedmeyer was not a proper corporate entity but was rather the alter ego of his brother, Vincent Pupillo.
 
 
 10
 Pupillo argues that his positions as secretary, vice-president, and director of Friedmeyer were only nominal because he possessed no actual control over the corporation's business. He asserts that the positions were set up by his brother Vincent for the sake of formality, but that no shareholders or Board of Directors meetings were held after April 19, 1978. Instead, Vincent Pupillo would direct his attorney to draw up some minutes, which Salvatore would sign when told to by Vincent, without reading the contents. Vincent Pupillo alone, Salvatore Pupillo alleges, made all of the decisions concerning purchases and payments. The issuance of the two shares of stock to Pupillo, he maintains, was also a sham transaction arranged by Vincent. Pupillo claims that he never paid money, performed services, or exchanged property for the stock as required by the Missouri Constitution. The stock certificate never left the stock record book, and neither the stock transfer sheet nor the stock certificate was signed by Pupillo.
 
 
 11
 The second argument Pupillo makes as to why he was not responsibly connected with Friedmeyer is closely tied to the first. Because Vincent adopted only the corporate formalities for Friedmeyer, such as making himself and his brother directors and officers, without adopting the manner of corporate functioning, such as directors meetings or votes, Pupillo alleges that the corporation was really the "alter ego" of Vincent. As such, Pupillo contends that Friedmeyer was not really a corporation as contemplated in Section 1(9) of the Act.[5] Pupillo states that this court should pierce the corporate veil and acknowledge that Friedmeyer was in fact if not in form the sole proprietorship of Vincent Pupillo, so as to avoid working an injustice on Pupillo.
 
 B. The Law
 
 12
 Few courts have considered the quantum of proof necessary to establish that an individual is "responsibly connected" to a PACA violator. The courts that have addressed the issue are in conflict with each other. In the first case on the question, Birkenfield v. United States, 369 F.2d 491, 494 (3d Cir.1966), the United States Court of Appeals for the Third Circuit interpreted 7 U.S.C. Sec. 499a(9)(B), defining "responsibly connected," as establishing "per se" exclusionary standards. That is, any person affiliated or connected with a PACA violator as an officer, director, or holder of more than 10 percent of the outstanding stock would be subject to the Secretary of Agriculture's power to prohibit employment under 7 U.S.C. Sec. 499h(b),[6] without being able to establish a defense, such as lack of real authority. Like Pupillo, the appellant in Birkenfield was sanctioned under 7 U.S.C. Sec. 499h(b) despite his contention that he was only nominally an officer, director, and shareholder of a PACA violator. The Third Circuit justified its per se approach in part by stating:
 
 
 13
 Surely, the relationships of director, officer or substantial shareholder form a sufficient nexus for the arbitrary conclusion of responsible connection. Moreover, the formation of such relationships with the sanctioned company is a voluntary act. The fact that an individual has not exercised "real" authority is not controlling: certainly the individual could have resigned as an officer and director and disposed of his stock. It was his free choice not to do so. Having made that choice, the appellant assumed the burdens imposed by the Act.
 
 
 14
 369 F.2d at 494, 495.
 
 
 15
 The Second Circuit Court of Appeals, in Zwick v. Freeman, 373 F.2d 110, 119 (2d Cir.1967), cited with approval the Third Circuit's per se approach in Birkenfield.
 
 
 16
 In contrast to the Third Circuit's approach in Birkenfield, the United States Court of Appeals for the District of Columbia held in Quinn v. Butz, 510 F.2d 743, 756 (D.C.Cir.1975), that 7 U.S.C. Sec. 499a(9)(B) raises only a rebuttable presumption that one affiliated with a PACA violator as an officer, director, or holder of 10 percent or more of stock is responsibly connected with the violator. The petitioner in that case, who became corporate vice-president only at the request of his employer, and claimed that he never attended board meetings, performed services as vice-president, made any business decisions, or knew of the company's financial difficulties, was given an opportunity to prove his officership was purely nominal. The court concluded that such an opportunity was warranted by looking to the legislative history of 7 U.S.C. Sec. 499a(9). Finding nothing to indicate that Congress intended to establish an irrebuttable presumption of responsible connection, the court declined to interpret the section as stating such a "drastic" standard.
 
 
 17
 In addition to holding that Section 499a(9)(B) raises a rebuttable presumption, the District of Columbia Circuit also held that the petitioner could avoid the statutory penalty by proving that the company for which he had served as "vice-president" was not a corporation within the meaning of Section 499a(9). The petitioner had offered proof that the company's president and sole shareholder had such complete dominion over the business that it was akin to a sole proprietorship. The court held that the Secretary should have accepted the evidentiary proffer to consider whether the corporate veil should have been pierced so as to render Sections 499a(9) and 499h(b) inapplicable to the petitioner.
 
 
 18
 The District of Columbia Circuit further strayed from the Third Circuit's per se interpretation of Section 499a(9) in Minotto v. United States Department of Agriculture, 711 F.2d 406 (D.C.Cir.1983). The petitioner in that case, Lilly Minotto, was sanctioned pursuant to the Secretary of Agriculture's finding that she was responsibly connected with her employer, which was found to have violated PACA. The finding of responsible connection was based on Minotto's position as a director of the company, and her attendance at Board of Directors meetings, which ensured the quorum necessary to enact resolutions. Minotto, however, denied knowledge of the company's conduct that led to the violations and received no compensation for assuming the director's position. The court reversed the Secretary's finding of responsible connection, stating that "[a] finding of liability under Section 499h of the Act must be premised upon personal fault or the failure to 'counteract or obviate the fault of others.' " 711 F.2d at 408, quoting Quinn v. Butz, 510 F.2d 743, 756 (D.C.Cir.1975). The court found significant the lack of evidence in the record that Minotto "knew or should have known of the Company's misdeeds." 711 F.2d at 408.
 
 
 19
 C. Application of the Law to Petitioner's Case
 
 
 20
 On appeal, we must uphold the agency decision if it is supported by substantial evidence and no legal errors compromise the decision. See Glover Livestock Commission Co. v. Hardin, 454 F.2d 109, 110 (8th Cir.1972), rev'd on other grounds, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973); Minotto, 711 F.2d at 407 n. 3. Pupillo urges us to adopt the District of Columbia Circuit's rebuttable presumption analysis of Section 499a(9), or alternatively, to accept that court's holding that piercing the corporate veil can be proper in some PACA cases. We conclude, however, after a review of the cases that the Third Circuit's interpretation of Section 499a(9) as a per se rule, conclusively establishing those responsibly connected with PACA violators, is the preferable approach. Reading Section 499a(9) as an irrebuttable statement that an officer, director, or holder of more than 10 percent of the outstanding stock of a corporation or association is responsibly connected with that corporation or association adds objectivity and certainty to the law. The legislative history of Section 499a(9) promotes an interpretation of the section as reflecting Congress' wish to instill certainty into PACA's treatment of individuals responsibly connected with violators. In recommending the bill that amended PACA to include, among other changes, the definition of "responsibly connected," the Committee on Agriculture reported that the bill would "[i]mprove and clarify provisions dealing with the eligibility for license, or for employment by licensees, of persons guilty of specified acts and persons affiliated by them."[7] The Committee also noted that defining "responsibly connected" would give the term "specific meaning, thus avoiding possible confusion as to interpretations."[8]
 
 
 21
 Further, the Committee also discussed the section of the bill that changed the section of the Act (now 7 U.S.C. Sec. 499d(b)) dealing with the denial of license applications. Under the bill, an applicant would be refused a license if the applicant (or one of the applicant's officers, directors, or members, or a holder of more than 10 percent of the applicant's stock) was responsibly connected with a person guilty of conduct specified in the section. The Committee pointed out that the license would be refused "without showing (as is now required) that the applicant, officer, director, or member was responsible in whole or in part for such conduct."[9] Although Section 499d(b) is not at issue in this case, the definition of "responsibly connected" in Section 499a(9) applies throughout the Act. Thus this language evidencing the Committee's intent that a person could be found responsibly connected with a PACA violator without any showing that the person was in any way responsible for the violation is equally applicable to Section 499h(b), under which Pupillo has been sanctioned. Therefore, a person could be found responsibly connected with a PACA violator and thus denied employment with another licensee under Section 499h(b), regardless of whether that person was responsible for the violation. The District of Columbia Circuit's statement in Minotto that a person can be sanctioned under Section 499h of the Act only upon a finding of personal fault or the failure to prevent the fault of others not only reads a condition that does not exist into the Act's definition of responsible connection, it runs afoul of Congressional intent as expressed in the House Report. In sum, we find that a per se analysis of Section 499a(9) better accomplishes Congress' objective of providing a clear definition of "responsibly connected," and that Congress did not intend to require proof of personal fault to penalize a person associated with a PACA violator.
 
 
 22
 Under the per se interpretation of Section 499a(9), the finding of Pupillo's responsible connection to Friedmeyer is clearly supported by substantial evidence. Indeed, Pupillo as much as concedes that his penalty would be upheld if this court chose to adopt the Birkenfield approach. Pupillo passed himself off as Friedmeyer's vice-president, secretary, and director on numerous occasions, most significantly by signing documents filed with the State of Missouri, and being designated an officer and director on Friedmeyer's PACA license renewal applications. Further, as the Presiding Officer noted, Pupillo's contention that he was never issued the two shares of stock and that he did not pay for them seems questionable in light of the stock book records indicating that he returned the stock on July 1, 1980. Like the appellant in Birkenfield, Pupillo chose of his own accord to assume the positions of director, officer, and shareholder of Friedmeyer, and he also chose not to resign the positions until after the corporation had violated PACA. As the Third Circuit stated, "Having made that choice, the appellant assumed the burdens imposed by the Act." 369 F.2d at 495.
 
 
 23
 Even assuming arguendo that Section 499a(9) states a rebuttable presumption, as the District of Columbia Circuit held in Quinn, we agree with the Government that the Presiding Officer's finding was still supported by substantial evidence. In Quinn, the evidence established that the petitioner had allowed his employer to use his name as vice-president of the company to comply with incorporation requirements, but that he never performed services as vice-president, attended meetings, or had any knowledge of the company's financial problems. In contrast, however, Pupillo signed Friedmeyer's corporate minutes as vice-president and secretary, thereby approving actions taken by the Board of Directors; signed documents that were filed with the state; signed, as the company's secretary, the stock certificate registered in his name; and formally resigned his positions as shareholder, director, vice-president, and secretary on July 1, 1980. As the Presiding Officer noted, Pupillo's resignation occurred two months after he was informed that he could be penalized if Friedmeyer were found to have violated the Act. And, unlike Minotto, who "had no real authority" within her company, was "essentially a clerical employee," and neither knew or should have known of the Company's violative conduct, Pupillo was, as night boss, second in command at Friedmeyer, and knew of the company's financial difficulties and creditors' demands for payment.
 
 
 24
 Pupillo contends that no directors or shareholders meetings were held after April 19, 1978, that the minutes were drawn up by an attorney at Vincent's direction, and that Pupillo signed the minutes and other documents when directed to by Vincent, without reading them. Thus Pupillo asserts that he lacked real responsibility or authority. Whether or not Pupillo's contention that he blindly signed the documents and records is true, it is worth noting the Presiding Officer's observation that, "The case rests largely on the accuracy and intent of the records of incorporation, issuance of stock, minutes of directors' meetings, and agency licensing records [,r]ecords that were prepared long before Friedmeyer incurred substantial problems and the potential issues that might be raised in a responsibly connected proceeding." Regardless, we think that Pupillo's retention of his positions for over a two-year period, along with the exercise of his powers in those positions even by merely signing the various documents, thereby enabling Friedmeyer to carry on its corporate business, and his knowledge of Friedmeyer's difficulties, are enough even under the Quinn standard to find Pupillo responsibly connected.
 
 
 25
 Further, we conclude that application of the piercing the corporate veil doctrine is not warranted here. Friedmeyer was, as the Presiding Officer found, duly incorporated under the laws of Missouri. Although Vincent Pupillo may have been the dominant force at Friedmeyer, the company was run with considerable input from Salvatore Pupillo as well. Because Pupillo was properly found to be responsibly connected to Friedmeyer, piercing Friedmeyer's corporate veil would not prevent the working of an injustice on an innocent person, as Pupillo asserts. Rather, it would allow Pupillo to avoid sanction, even though his actions over a two-year period enabled Friedmeyer to do business in the corporate form and enjoy the advantages associated with that form.
 
 D. Evidence at the Hearing
 
 26
 Pupillo also raises for consideration on appeal the inclusion of the "official file" in the evidence at the hearing before the Presiding Officer, without any request or motion from counsel for the USDA that the file be admitted into evidence. Because the file was not formally proffered for admission, Pupillo states that he did not have a chance to object to its admission. He claims that because the Presiding Officer wrongly considered evidence not properly in the record, his substantial rights were affected.
 
 
 27
 According to the Code of Federal Regulations, when a matter is assigned for an oral hearing, the presiding officer shall make the official file a part of the records of the proceeding.[10] Pupillo was sent a copy of the official file two months before the hearing; further, he does not dispute the contents of the documents in the official file. We agree with the Government that the Presiding Officer's consideration of the official file in this case was at most harmless error. See County of Del Norte v. United States, 732 F.2d 1462, 1467 (9th Cir.1984) (general rule is that insubstantial errors in an administrative proceeding that prejudice no one do not require administrative decisions to be set aside).
 
 II. Conclusion
 
 28
 Because we hold that the Presiding Officer's finding that Salvator Pupillo was responsibly connected with Friedmeyer is supported by substantial evidence, the decision to sanction Pupillo under 7 U.S.C. Sec. 499h(b) is affirmed.
 
 
 
 [1]
 7 U.S.C. Sec. 499b(4) states in part:
 "It shall be unlawful in or in connection with any transaction in interstate or foreign commerce for any commission merchant, dealer, or broker * * * to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had * * * * "
 
 
 [2]
 7 U.S.C. Sec. 499h(b)
 
 
 [3]
 7 U.S.C. Sec. 499a(9)(B)
 
 
 [4]
 The Presiding Officer noted that the listing of Pupillo as treasurer of the firm was probably in error because all of the other documents in evidence listed him as the firm's secretary
 
 
 [5]
 7 U.S.C. Sec. 499a(9)(B). See text accompanying note 3
 
 
 [6]
 See text accompanying note 2
 
 
 [7]
 H.R.Rep. No. 1546, 87th Cong., 2d Sess. 8 (1962), reprinted in 1962 U.S. Code Cong. & Ad.News, 2749, 2750
 
 
 [8]
 Id. at 2751
 
 
 [9]
 Id. at 2753
 
 
 [10]
 7 C.F.R. Sec. 47.53 (1983)