United States Court of Appeals,

Fifth Circuit.

No. 92-4852

Summary Calendar.

Gary K. FAOUR, Petitioner,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.

March 8, 1993.

Petition for Review of a Final Order of the Department of Agriculture.

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Gary Faour seeks review, pursuant to 28 U.S.C. § 2342, of a final order of the Administrator of the Agricultural Marketing Service of the Department of Agriculture ("USDA") finding that Faour was "responsibly connected" with the Magnolia Fruit & Vegetable Company ("Magnolia") during a time when Magnolia committed "repeated and flagrant" violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.* We deny the petition for review and affirm the order.

I.

Faour started in the produce industry as a young boy, working in his parent's family business. He and his three brothers eventually inherited the business and incorporated it as Magnolia in 1969. Magnolia engaged in the wholesale purchase and sale of fruits and vegetables until it filed for bankruptcy under chapter 11 of the Bankruptcy Code in 1988.

Faour served Magnolia in various capacities. At Magnolia's inception, he was its vice-president and assistant secretary. In 1986, he was still vice-president but no longer assistant secretary. He also served as a director until 1987. In the mid-1980's, he was the food service sales manager, and in 1987 he served as manager for institutional sales. Initially, in 1969, Faour owned 27.27% of the company's outstanding stock; in 1986, he owned only 10.5%.

On September 11, 1987, Faour left his job at Magnolia. On October 1, 1987, he wrote a letter to his brother, Kenneth, in which he submitted his resignation as a director and officer. He claimed that this resignation was effective as of September 14, 1987. The letter did not mention Faour's stock ownership.

In the mid-1980's, Magnolia started to encounter financial difficulties. On October 1, 1986, Faour signed a security agreement for a loan to Magnolia for $972,148.07 from Woodforest National Bank. Under the agreement, all of Faour's Magnolia stock served as security for the loan, and Faour was precluded from selling, transferring, or assigning the stock without the bank's prior written consent.

Magnolia's financial problems continued, leading to its filing for bankruptcy protection in 1988. In early 1989, the USDA filed a complaint against Magnolia, alleging that it had committed fifty-four violations of 7 U.S.C. § 499b(4)[1] from August through December 1987 by failing to make full and prompt payment of a total of $213,666.07 to nineteen sellers of perishable agricultural commodities. Ten of the violations involved transactions that required Magnolia to make full payment by September 30, 1987. The payment due dates, names of the unpaid sellers, and amounts owed are as follows:

| | | |
|---|---|---|
| 8-25-87 | Nagel Produce Co. | $ 1,629.20 |
| 8-28-87 | Live Oak Farms | 53.00 |
| 9-11-87 | Live Oak Farms | 3,389.00 |
| 9-12-87 | Nagel Produce Co. | 900.00 |

[1]Title 7 U.S.C. § 499b(4) states, in relevant part, that it is unlawful

> [f]or any commission merchant, dealer, or broker to make, for a fraudulent purpose, any false or misleading statement in connection with any transaction involving any perishable agricultural commodity which is received in interstate or foreign commerce by such commission merchant, or bought or sold, or contracted to be bought, sold, or consigned, in such commerce by such dealer, or the purchase or sale of which in such commerce is negotiated by such broker; or to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or to fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such transaction....

| | | |
|---|---|---|
| 9-19-87 | Live Oak Farms | 4,996.50 |
| 9-27-87 | C.H. Robinson | 2,291.96 |
| 9-27-87 | C.H. Robinson | 11,256.00 |
| 9-28-87 | C.H. Robinson | 6,155.15 |
| 9-30-87 | C.H. Robinson | 6,008.50 |
| 9-30-87 | C.H. Robinson | 5,088.65[2] |

On July 18, 1989, an administrative law judge ("ALJ") issued a decision in the disciplinary proceeding, finding that Magnolia had committed willful, flagrant, and repeated violations of the PACA "during the period from August through December of 1987." The ALJ took official notice of Magnolia's Bankruptcy Schedule A-3, which admitted that it owed $427,041.51 to fourteen of the nineteen unpaid produce sellers. The USDA affirmed the ALJ's decision. In *Magnolia Fruit & Produce Co. v. Dep't of Agric.* (*"Magnolia I"*), No. 90-4643, slip op. at 14 (5th Cir. Apr. 3, 1991) (unpublished), we affirmed the USDA's determination that Magnolia had committed repeated violations during the period at issue.[3]

In February 1989, the USDA notified Faour that it considered him to have been "responsibly connected" with Magnolia during a time when Magnolia had committed repeated violations of PACA. Faour replied in writing that he was not responsibly connected. The Department decided Faour was responsibly connected. Faour appealed.

On August 1, 1991, a presiding officer, assigned by the Administrator of the Agricultural Marketing Service, held a hearing at which Faour challenged the initial "responsibly connected" determination. The presiding officer found, among other things, that Faour was an officer and director of Magnolia until at least September 14, 1987, but noted that since Faour did not write his resignation letter until October 1, 1987, that date (October 1) was "more likely considered the actual date of his resignation." The presiding officer additionally found that though Faour pledged his

[2]The USDA's decision finding Magnolia to have violated § 499b(4) determined this to be an accurate (partial) listing of the transactions constituting willful, repeated, and flagrant violations.

[3]We also found that the ALJ properly took official notice of Magnolia's Bankruptcy Schedule A-3. *Magnolia,* slip op. at 10-12.

ownership of 10.5% of Magnolia's stock as collateral for the loan, he never abandoned his stock ownership. The presiding officer concluded that because Faour was an officer, director, and holder of more than ten percent of Magnolia's stock during a time when Magnolia committed repeated violations of PACA, Faour was responsibly connected with Magnolia under section 499a(b)(9)(B). On July 24, 1992, the Administrator affirmed the decision of the presiding officer.

II.

We shall uphold an agency decision unless we find it to be arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A). Further, we shall uphold an agency's findings of fact if they are supported by substantial evidence. *Federal Trade Comm'n v. Indiana Fed'n of Dentists,* 476 U.S. 447, 454, 106 S.Ct. 2009, 2016, 90 L.Ed.2d 445 (1986). Legal issues, "by contrast, [are] for the courts to resolve, although even in considering such issues the courts are to give some deference to the [agency's] informed judgment...." *Id.*

Congress has decided that no licensee under PACA shall employ any person who has been "responsibly connected" with any organization which has committed any "flagrant or repeated violation" of section 499b. 7 U.S.C. § 499h(b)(2).[4] Section 499a(b)(9) defines "responsibly connected" as

> affiliated or connected with a commission merchant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association.

We find the plain meaning of this statute unambiguous. If a person is an officer or director of, or holds over ten percent of the outstanding stock of, a corporation that has been found to have committed any flagrant or repeated violation of section 499b, that person is considered "responsibly

---

[4]Title 7 U.S.C. § 499h(b)(2) states as follows:

> (b) Except with the approval of the Secretary [of Agriculture], no licensee shall employ any person, or any person who is or has been responsibly connected with any person—

> (2) who has been found after notice and opportunity for hearing to have committed any flagrant or repeated violation of section 499b of this title, but this provision shall not apply to any case in which the license of the person found to have committed such violation was suspended and the suspension period has expired or is not in effect....

connected" and subject to sanctions under PACA. The statute is explicit: If a person falls within one of the three enumerated categories, he is responsibly connected. The statute does not contemplate a defense that allows a person to show that even though he fits into one of the three categories, he never had enough actual authority to be considered truly responsibly connected.

Despite this plain language, Faour asks us to find that his actual connection to Magnolia was so "nominal," and that he was so "blameless" for any of Magnolia's violations, that we should not find him responsibly connected under section 499h(b)(2). In essence, Faour argues that we should employ the interpretation of the statute that the District of Columbia Circuit has adopted, an interpretation that reads a rebuttable presumption into the statute. Under this presumption, we would presume a person to be responsibly connected if he fit into any of three categories listed in section 499a(b)(9) but would allow him to rebut this presumption by proving that his position was simply nominal. We reject this formulation.

In *Quinn v. Butz,* 510 F.2d 743, 751 (D.C.Cir.1975), a court determined, for the first time, that the presumption was rebuttable rather than absolute. The court found that a person who held the title of vice-president was not "responsibly connected" to a corporation that had committed flagrant and repeated violations of PACA because he neither participated in the management of the corporation nor had the power to participate. *Id.* at 753. The court rejected an interpretation of the statute that rested upon "a literal reading of the language...." *Id.*

The District of Columbia Circuit adhered to this interpretation in *Minotto v. United States Dep't of Agric.,* 711 F.2d 406, 409 (D.C.Cir.1983). The court found that a bookkeeper of a corporation who later became one of five members of the board of directors was not "responsibly connected" because her position was no more than nominal. *Id.* at 407-08. Because the defendant "lacked both the training and the experience to be an active director" and had no real authority, the court determined that she was not responsibly connected. *Id.* at 409. To be responsibly connected, the court pronounced, there must be "evidence of an actual, significant nexus with the violating company." *Id.*

Other circuits considering this issue have disagreed with the District of Columbia Circuit's

interpretation of section 499a(b)(9). Instead of reading a rebuttable presumption into the statute, they have adopted what has become known as the "*per se* rule." The first court to consider this statute was the Third Circuit in *Birkenfield v. United States,* 369 F.2d 491 (3d Cir.1966).

The court in *Birkenfield* definitively rejected the argument that a treasurer, director, and stockholder of a corporation found to have violated PACA should not be found responsibly connected because he never had real responsibility in the corporation's affairs. *Id.* at 494. The court examined the history of section 499a(b)(9) and concluded that Congress had rationally crafted this statute to establish a *per se* exclusionary standard. *Id.* Simply holding the position of director or officer, or owning ten percent of the corporation's stock, was enough to be responsibly connected. *Id.*[5]

More recently, in *Pupillo v. United States,* 755 F.2d 638, 643 (8th Cir.1985), the court explicitly rejected the District of Columbia Circuit's rebuttable presumption approach and embraced the *per se* rule as the "preferable approach." The court found that a strict reading of the language of the rule added objectivity and certainty to the law. *Id.* Additionally, the court noted that in drafting the statute, Congress intended to help courts avoid confusion in "interpretation by allowing a person to be found responsibly connected regardless of responsibility." *Id.* at 643-44. The court concluded that a

> per se analysis of Section 499a[b](9) better accomplishes Congress' objective of providing a clear definition of "responsibly connected," and that Congress did not intend to require proof of personal fault to penalize a person associated with a PACA violator.

*Id.* at 644.

We too reject the rebuttable presumption approach in favor of the *per se* rule that the plain language of section 499a(b)(9) commands. This language shows that Congress intended for any person who falls into any one of the three enumerated categories to be considered responsibly connected. We see no reason to look beyond the unambiguous language of the statute.

III.

---

[5]In *Zwick v. Freeman,* 373 F.2d 110, 119 (2d Cir.), *cert. denied,* 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967), the court cited with approval the *per se* rule applied in *Birkenfield.*

Having decided to apply the *per se* rule, we examine whether Faour fits into any of the three categories. He admits that he was an officer and director of Magnolia until September 14, 1987. He argues that although Magnolia admitted committing many violations of PACA, none of them occurred before September 14.

Unfortunately for Faour, the facts do not support his argument. In *Magnolia I,* we affirmed the USDA's final decision to the effect that Magnolia had committed repeated violations of PACA from August through December 1987. The department's decision specifically referred to fifty-four transactions leading to violations of PACA, of which four occurred before September 14, 1987. These four violations consisted of Magnolia's failing to make full and prompt payment to produce companies as required by section 499b(4) on August 25, August 28, September 11, and September 12, 1987.[6]

In *Magnolia I,* slip op. at 6, we pointed out that for a violation to be "repeated," it "requires little, if anything, beyond "more than once....' " Magnolia committed at least four violations during the period when Faour agrees he was still a director and officer. Faour would have us determine that none of the four violations occurring prior to September 14 was actually a violation because in *Magnolia I,* we never made specific findings on the dates and amounts of individual violations.

We shall not independently make a factual determination of each violation. Our standard of review requires us to uphold the department's findings of fact if they are supported by substantial evidence. In this case, the presiding officer, relying upon our opinion in *Magnolia I,* found that Magnolia had committed repeated violations of PACA from August through December 1987. Substantial evidence supports this finding. In *Magnolia I,* we affirmed the USDA's final decision, which specifically referred to each of the four violations occurring prior to September 14. This is ample evidence for us to uphold the presiding officer's determination that violations took place while

---

[6]We note that a controversy exists over the date Faour effectively relinquished his positions as director and officer. Faour maintains that his resignation took effect on September 14, the day on which he states in his letter that he resigned. The USDA counters that his resignation became effective only on October 1, the day Faour sent his letter. We need not resolve this dispute. Even if we take September 14 as the resignation date, we see that four violations of § 499b(4) had already occurred.

Faour was a director and officer.

Finally, we note that Faour and the USDA disagree about whether Faour still owned over ten percent of Magnolia's outstanding stock during the time Magnolia committed repeated PACA violations. We need not resolve this dispute. Under section 499a(b)(9), Faour need only fall into one of three categories—either a director, an officer, *or* a holder of more than ten percent of the stock—to be found "responsibly connected." We have found that Faour was a vice-president and director until at least September 14, a period during which Magnolia committed four violations of section 499b(4). Accordingly, we DENY the petition for review and AFFIRM the Administrator's order.

. . . . .