The WILDERNESS SOCIETY; Sierra Club; Pacific Coast Federation of Fishermen's Associations, Inc.; California Trout, Plaintiffs–Appellees,

Sierra Pacific Industries, Intervenor–Appellant,

v.

Robert TYRREL, Forest Supervisor of the United States Forest Service for the Shasta–Trinity National Forests; Paul Barker, Regional Forester of the United States Forest Service for Region Five, Defendants.

The WILDERNESS SOCIETY; Sierra Club, a California Non–Profit Corporation; Pacific Coast Federation of Fishermen's Associations, Inc.; California Trout, Plaintiffs–Appellees,

v.

Robert TYRREL, Forest Supervisor of the United States Forest Service for the Shasta–Trinity National Forests; Paul Barker, Regional Forester of the United States Forest Service for Region Five, Defendants–Appellants.

Nos. 90–15221, 90–15251.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1990.

Decided Nov. 6, 1990.

Elizabeth Ann Peterson, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Stephan C. Volker, Sierra Club Legal Defense Fund, San Francisco, Cal., for plaintiffs-appellees.

David H. Dun, Dun & Martinek, Eureka, Cal., for intervenor-appellant.

Before CHOY, FARRIS and THOMPSON, Circuit Judges.

FARRIS, Circuit Judge:

## OVERVIEW

The Forest Service appeals the grant of Wilderness Society's summary judgment motion to permanently enjoin implementation of the South Fork Fire Recovery Sale Project. The district court found that the Forest Service's plan to allow a sale of burned timber on Forest Service land near the South Fork of the Trinity River, a river protected under the Wild and Scenic Rivers Act, was in violation of that Act. 16 U.S.C. §§ 1271–1287.

This case requires us to define the requirements imposed by the Wild and Scenic Rivers Act on the Forest Service in "administering" and "managing" federal land adjacent to or within a river area designated for protection by the Secretary of the Interior pursuant to 16 U.S.C. § 1273(a)(ii).

The district court held that the Act requires the Forest Service to create a management plan for the river and enjoined the proposed sale of the burned timber because no such plan had been formulated. There is no dispute that a management plan was not prepared.

We take full cognizance of the discussions of management plans contained in the Wild and Scenic Rivers Act and the Forest Service regulations. Nonetheless, we find that the district court erred in holding that the government was required to prepare a comprehensive management plan prior to conducting land management activities on

federal land adjacent to or within a Secretary designated river area. Although the Forest Service is obligated to conduct itself in a manner that respects the goals of the Act and preserves the values for which the area received protected status, neither the Act nor the Forest Service's own regulations require that it prepare a management plan for the South Fork.

## JURISDICTION

The district court had general federal question jurisdiction pursuant to 28 U.S.C. § 1331. The court of appeals has jurisdiction pursuant to 28 U.S.C. § 1291. The notice of appeal was properly filed within 60 days of the district court's final judgment, pursuant to Fed.R.App.P. 4(a)(1).

## ISSUES

Three issues are before the court:

1) Does the Wild and Scenic Rivers Act require that a federal agency prepare a comprehensive management plan prior to undertaking land management activities on federal land adjacent to or within a Secretary designated river area?

2) Do the Forest Service's own internal guidelines mandate that a comprehensive plan be prepared?

3) If the Forest Service has no such duty, (a) what is the extent of its legal duty to protect a river that has been designated by the Secretary under the Wild and Scenic Rivers Act and (b) have such obligations been satisfied?

## FACTS

This appeal is from a grant of summary judgment. The facts are not in dispute.

The South Fork of the Trinity River is included in the National Wild and Scenic Rivers System. The Forest Service wishes to conduct a sale of fire damaged timber on National Forest land located in the area immediately around portions of the South Fork. In district court, the plaintiffs successfully challenged the proposed salvage sale as violating the Wild and Scenic Rivers Act.

Of particular interest in this appeal are sections 1(b), 2, 3, 10, and 12 of the Act. The parties cite no case law interpreting section 2(a)(ii), the pivotal provision, because there is none. The case is one of first impression.

## DISCUSSION

### I.  Introduction to the Wild and Scenic Rivers Act

The purpose of the Wild and Scenic Rivers Act is to select and protect certain rivers "which, with their immediate environments, possess outstandingly remarkable scenic, recreational, geologic, fish and wildlife ... or other similar values ... in free-flowing condition." 16 U.S.C. § 1271. The Wild and Scenic Rivers Act was enacted in 1968.

Rivers become part of the National Wild and Scenic Rivers System through one of two methods. They may be included by an Act of Congress after appropriate study reveals that the river warrants protection. 16 U.S.C. § 1273(a)(i). This is by far the most common method by which rivers are included in the national system. A second method is through the application of a state governor to the Secretary of the Interior. Because this method is set forth in section 1273(a)(ii) and requires the approval of the Secretary of the Interior, we refer to it as the (a)(ii), or Secretary designated, method of inclusion. Such rivers must not only meet the federal requirement of "outstandingly remarkable" qualities, see 16 U.S.C. § 1273(b); 47 Fed.Reg. 39,454–59 (Sept. 7, 1982), but the state legislature must designate them as wild, scenic, or recreational, and provide that they will be permanently administered as such by the state. A key requirement is that each Secretary designated river "shall be administered by the State or political subdivision thereof without expense to the United States other than for administration and management of federally owned lands." 16 U.S.C. § 1273(a).

The South Fork of the Trinity River was designated for inclusion in the national system by the Secretary of the Interior in the waning hours of the Carter administration.

46 Fed.Reg. 7484 (Jan. 23, 1981). There were numerous complaints that the process was unduly rushed for political reasons, *see* Fairfax, Andrews & Buchsbaum, *Federalism & the Wild & Scenic Rivers Act: Now You See It, Now You Don't*, 59 Wash.L. Rev. 417 (1984), but legal challenges to the designation were ultimately defeated, *see County of Del Norte v. United States*, 732 F.2d 1462 (9th Cir.1984).

The central benefits extended by Wild and Scenic Rivers Act designation are restrictions on water resource projects by federal agencies, especially the Federal Energy Regulatory Commission, *see* 16 U.S.C. § 1278, and on federal mining and mineral leasing that affects lands within the system, *see* 16 U.S.C. § 1280. In addition, the river area's administration must protect the values that justified the river's initial designation under the Act. There is limited provision for purchase and exchange of land around the designated river as well as mention of using state and local zoning laws. Restrictions are also placed on federal agencies engaged in projects around designated rivers, requiring respect be paid to the protected values. *See* 16 U.S.C. § 1283(a).

## II. The Requirement of a Management Plan

■ Courts have limited authority to impose procedural requirements upon a federal agency which seeks to exercise the responsibilities committed to it by Congress. A history of statutory and decisional law cautions "reviewing courts against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 525, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). In the absence of constitutional

constraints or extremely compelling circumstances a court may not fashion procedural obligations beyond those ` explicitly enumerated in the pertinent statutes. *Id.* at 525, 543, 558, 98 S.Ct. at 1202, 1211, 1219.

The district court relied primarily upon two textual bases in requiring that the Forest Service have a management plan for the South Fork. It found that the Wild and Scenic Rivers Act, itself, mandated that the Forest Service prepare a management plan prior to conducting land management activities.[1] The district court also garnered support for its holding by reference to the Forest Service's own manual.[2] We find that, in both instances, the district court read the provisions out of context and failed to analyze them in a manner consistent with established constraints on judicial authority.

### A. The Wild and Scenic Rivers Act

■ The district court's finding that the Wild and Scenic Rivers Act requires the Forest Service to prepare a management plan for the South Fork rests upon a misinterpretation of 16 U.S.C. § 1283(a). Section 1283, entitled "Management policies," states in part:

> The Secretary of the Interior, the Secretary of Agriculture, and the head of any other Federal department or agency having jurisdiction over any lands which include, border upon, or are adjacent to, any river included within the National Wild and Scenic Rivers System or under consideration for such inclusion ... *shall take such action respecting management policies, regulations, contracts, plans, affecting such lands ... as may be necessary to protect such rivers in accordance with the purposes of this chapter.*

16 U.S.C. § 1283(a) (emphasis added).

---

**1.** The district court found that the "defendants have failed to adopt the 'management policies, regulations, contracts [and] plans' affecting such lands as may be 'necessary to protect such rivers in accordance with the purposes of this chapter.'" *Wilderness Soc'y v. Tyrrel*, 701 F.Supp. 1473, 1487 (E.D.Cal.1988) (quoting 16 U.S.C. § 1283(a)).

**2.** The court noted that "'forest supervisors shall prepare and approve an implementation plan for each river area included in the [National Wild & Scenic Rivers Act] by (a) Act of Congress or (b) Secretary of the Interior designation under section 2(a)(ii) of the Act.'" *Tyrrel*, 701 F.Supp. at 1488 (quoting Forest Service Manual § 2354.32 (Region 5 Supp. 165) (July 1988)).

In reading the highlighted text to require the Secretary to *create* "management policies, regulations, contracts, [and] plans" to protect the river, the district court misconstrued the word "respecting." That the Secretary must take such action *"respecting"* policies and plans suggests an interaction between independent federal land policies and the interests and purposes of the Wild and Scenic Rivers Act, not a mandate that all agencies with jurisdiction over federal lands within or adjacent to a protected river system formulate a management plan under the Act. The requirement specified in section 1283(a) is that federal agencies conducting management activities within or near the boundaries of a protected river conform their policies and programs to the purposes of the Wild and Scenic Rivers Act. We recognize that the distinction is subtle; however, it is significant. A requirement to consider river values protected under the Act in the course of undertaking any independent project or plan differs from a procedural requirement that federal agencies prepare a plan under the Act itself.

Plaintiffs/Appellees seek to bolster the district court's interpretation of the Wild and Scenic Rivers Act with reference to 16 U.S.C. §§ 1281 and 1274. Section 1281 states in pertinent part:

> Each component of the national wild and scenic rivers system shall be administered in such manner as to protect and enhance the values which caused it to be included in said system without, insofar as is consistent therewith, limiting other uses that do not substantially interfere with public use and enjoyment of these values. In such administration primary emphasis shall be given to protecting its esthetic, scenic, historic, archeologic, and scientific features. Management plans for any such component may establish

varying degrees of intensity for its protection and development, based on the special attributes of the area.

16 U.S.C. § 1281(a). This section anticipates the existence of management plans but there is neither an express requirement that such plans be prepared nor a timetable for their preparation. In the absence of such explicit language, we can not infer that the section mandates that a federal agency prepare a comprehensive management plan prior to conducting land management activities on federal land adjacent to or within a Secretary designated river area. Our authority to "interpret" statutory language falls short of permitting us to add requirements that are not mandated by the language used by Congress.

Section 1274(d) provides:

> (1) For rivers designated on or after January 1, 1986, the Federal agency charged with the administration of each component of the National Wild and Scenic Rivers System shall prepare a comprehensive management plan for such river segment ...
>
> (2) For rivers designated before January 1, 1986, all boundaries, classifications, and plans shall be reviewed for conformity within the requirements of this subsection within 10 years through regular agency planning processes.

16 U.S.C. § 1274(d) (1988).

Although paragraph (2) refers to plans for rivers designated prior to 1986, the provision requires only a review of pre-existing plans rather than a requirement that such plans be prepared. Under the statutory scheme preceeding the 1986 amendments, the Wild and Scenic Rivers Act required that management plans be developed only for rivers designated by Act of Congress.[3] Thus, the present section 1274 merely directs that plans developed under the pre-amendment Act for rivers designat-

---

**3.** Before the 1986 amendment, section 1274 provided that:

> The agency charged with the administration of each component of the national wild and scenic rivers system *designated by subsection (a)* [an Act of Congress] of this section shall, within one year from October 2, 1968 ... establish detailed boundaries therefor ...;

and prepare a plan for necessary developments in connection with its administration in accordance with [its] classification.

16 U.S.C. § 1274(b)(1982) (emphasis added). The highlighted text explicitly restricts the application of the section to rivers designated under section 1273(a)(i).

ed by Congress be reviewed for conformity with the requirements of the 1986 amendments. Although supererogatory plans prepared for rivers designated by the Secretary of the Interior prior to January 1, 1986 may be subject to review under section 1274(d), the provision does not require that management plans be developed for such rivers.

■ We do not ignore the references to management plans in the Wild and Scenic Rivers Act. We also recognize that the preparation of comprehensive plans prior to embarking on land management activities would be a prudent measure to ensure that the purposes of the Act are respected. However, we are not free to impose our own notions of procedural propriety upon the Forest Service. Courts must be reluctant to mandate that a federal agency step through procedural hoops in effectuating its administrative role unless such procedural requirements are explicitly enumerated in the pertinent statutes or otherwise necessary to address constitutional concerns. Since the Wild and Scenic Rivers Act does not expressly require a federal agency to prepare a management plan for a river designated by the Secretary of the Interior before January 1, 1986, in order to conduct land management activities on federal land adjacent to or within the protected river area, we can not properly read such a requirement into the statute.

## B. The Forest Service Manual

The district court also relied on the Forest Service Manual to find that a management plan must be prepared. Reliance on these internal guidelines is also misplaced.

The government argues that the Forest Service Manual does not constitute a substantive regulation binding upon the agency. However, we need not determine the legal force of the internal guidelines. Even if we assume, *arguendo,* that the Forest Service Manual is binding, the guidelines do not bar the Forest Service from implementing the proposed sale of the burned timber without first preparing a comprehensive plan for the South Fork.

Section 2354.32 of the Forest Service Manual, entitled "River Management Plan," reads in part:

Manage river areas which either Congress or the Secretary of the Interior designates as components of the National Wild and Scenic Rivers Systems (NW & SRS) in accordance with the requirements of the Act....

Forest Supervisors shall prepare and approve an implementation plan for each river area included in the NW & SRS by (a) Act of Congress or (b) Secretary of the Interior designation under Section 2(a)(ii) of the Act. When a river crosses more than one National Forest, the Forest Supervisors involved shall jointly prepare and approve the implementation plan. Complete the plan by the date specified in the legislation or within three years after designation by the Secretary of the Interior, for rivers designated on or after January 1, 1986.

Forest Service Manual § 2354.32 (Region 5 Supp. 165) (July 1988).

The district court viewed the second paragraph of section 2354.32 as a firm statement of the Forest Supervisor's obligation to create a plan for Secretary designated rivers. However, the specified three year timetable refers only to rivers designated by the Secretary of the Interior on or after January 1, 1986. Because the South Fork was designated in 1981 such strictures are inapplicable. Moreover, we have found that the Wild and Scenic Rivers Act does not require that the Forest Service prepare a plan for federally owned property within or adjacent to a pre–1986 Secretary designated river. Thus the legislation does not specify a date for completion of such a management plan. As such, there is no timetable covering plan preparation for rivers designated by the Secretary prior to January 1, 1986. Notably, section 2354.32 does not require that a plan be formulated prior to conducting any land management activities on federally owned land. Since (1) no specified timetable for completion of a management plan was included and (2) there was no requirement that such plans be prepared before engaging in land

management activities, we must conclude that section 2354.32 was not violated by the Forest Service's failure to prepare a comprehensive plan of South Fork prior to the proposed sale of burned timber.[4]

Section 2354.32 would be violated only if the Forest Service failed to satisfy the first paragraph's requirement that a Secretary designated river be "manage[d] ... in accordance with the requirements of the Act." *Id.* However, such a requirement does not provide an independent basis for disallowing the proposed sale of timber. Rather, the obligation merely duplicates and anticipates the dispositive question remaining in this case: Since the Forest Service is not required to have prepared a plan for the South Fork, what are the Forest Service's management requirements?

### III. Requirements under the Act

The government contends that the Wild and Scenic Rivers Act is not implicated by the South Fork Fire Recovery Sale Project because the timber at issue rests on lands a quarter of a mile from the river. However, section 12 of the Act directs the federal agency with jurisdiction "over any lands which include, border upon, or are adjacent to, any river included within the National Wild and Scenic Rivers System" take action "to protect such rivers in accordance with the purposes of [the Act]." 16 U.S.C. § 1283(a). The land at issue in this case is either within or adjacent to the South Fork river system. The proposed sale of timber, whether conducted on land within the river area's boundaries or adjacent to the river area, will impact protected values. Thus, we proceed to address the obligations of the Forest Service under the Wild and Scenic Rivers Act.

Section 2(a) of the Act provides in pertinent part that:

Each river designated under clause (ii) shall be administered by the States or political subdivision thereof without expense to the United States *other than for administration and management of federally owned lands.*

16 U.S.C. § 1273(a) (emphasis added). Although the state is the principal administrator of a Secretary designated river system, the appropriate federal agency retains management responsibilities for implicated federal lands.

The requirements for managing land under the Wild and Scenic Rivers Act are specified in sections 10 and 12. As noted above, section 10 directs that:

Each component of the national wild and scenic rivers system shall be administered in such manner as to protect and enhance the values which caused it to be included in said system without, insofar as is consistent therewith, limiting other uses that do not substantially interfere with public use and enjoyment of these values. In such administration primary emphasis shall be given to protecting its esthetic, scenic, historic, archeologic, and scientific features.

16 U.S.C. § 1281(a).

Section 1283 requires that any federal agency with jurisdiction over lands within or adjacent to a Secretary designated river system "take such action ... as may be necessary to protect such rivers in accordance with the purposes of this chapter." 16 U.S.C. § 1283(a). The provision notes that "[p]articular attention shall be given to scheduled timber harvesting ... which

4. The Forest Service's regulation was greatly amended and clarified in 1989, after litigation had begun and the district court had issued its published opinion in favor of the Wilderness Society. In amended form it reads in part:

For rivers included in the NW & SRS on or after January 1, 1986 by Secretary of the Interior's designation under Section 2(a)(ii) of the Act, Forest Supervisors shall also prepare and approve a river (implementation) plan within three full fiscal years....
For rivers designated by the Secretary of the Interior before January 1, 1986, Forest Super-

visors shall develop boundary descriptions, review the classifications, and prepare and complete the river (implementation) plan within three full fiscal years after approval of the Forest Land and Resource Management Plan (FLRMP), but in no event later than October 27, 1996.

Forest Service Manual § 2354.32 (Region 5 Supp. 166) (Mar.1989), Appellees' Excerpts of Record at Exh. 24. Even were this amended form to apply, the Forest Service would still not have violated the timetable in failing to prepare a plan prior to the proposed sale.

might be contrary to the purposes of [the Act]." *Id.*

In addition to general requirements designed to ensure that the purposes of the Wild and Scenic Rivers Act are respected, section 1283 specifically requires that federal agencies "cooperate with the Secretary of the Interior and with the appropriate State water pollution control agencies for the purpose of eliminating or diminishing the pollution of waters of the [designated] river." 16 U.S.C. § 1283(c).

Whether the proposed sale of burned timber undermines the purposes of the Act or jeopardizes the values of the South Fork for which it received protected status is a factual question not presently before this court.[5]

The district court held, as a matter of law, that the Forest Service did not "cooperate" with the Secretary of Interior and appropriate state water pollution control agencies as required by 16 U.S.C. § 1283(c). The Secretary of the Interior and state agencies objected to the proposed sale, expressing concern that the plan chosen entails an unacceptable risk to water quality, the primary value prompting the river's designation under the Act. The Forest Service says it took those concerns into account. In the absence of a definition of cooperation in an applicable statute or regulation, the question of whether the Forest Service "cooperated" is one of fact. Whether the Forest Service cooperated can not be determined on this record as a matter of law.

---

**5.** The district court appears also to have read a joint guideline of the Departments of Interior and Agriculture to have barred timber harvest in the South Fork area as a matter of law. The district court stated:

  As amended, joint regulations of the Departments of Interior and Agriculture indicate that 'there should be ... no ongoing timber harvest' in wild areas, 47 Fed.Reg. 38457 (September 7, 1982), and that in scenic areas, any timber harvest must be 'accomplished without a substantial adverse effect on the natural appearance of the river or its immediate environment.' As published regulations promulgated by a national agency, these provisions plainly qualify as official agency interpretation under the indicia suggested in *Miller [v.*

## CONCLUSION

The narrow issue on appeal is whether the Wild and Scenic Rivers Act requires a federal agency to prepare a comprehensive management plan before conducting land management activities on federal land adjacent to or within a Secretary designated river area. We hold that for those river systems designated by the Secretary prior to January 1, 1986, no such plan is required. However, federal land must be managed so as to ensure that the purposes of the Wild and Scenic Rivers Act are not abrogated. The factual dispute as to the impact of the planned sale, and therefore as to whether the Forest Service has fulfilled its obligations under sections 10 and 12 of the Act, remains before the district court. Whether the record supports the argument of the Forest Service that their plan adequately protects the water quality and other protected values of the South Fork is not yet ripe for review. The district court must also determine whether, as a factual matter, the Forest Service fulfilled its obligation of cooperation under section 12(c).

REVERSED and REMANDED.

*Youakim],* 440 U.S. [125,] 145 n. 25, 99 S.Ct. [957,] 969 n. 25, [59 L.Ed.2d 194 (1979)]. 701 F.Supp. at 1484. However, the discussion cited by the court lists criteria governing the *selection* of rivers for inclusion in the system, rather than criteria governing management of rivers once included. The section of the guideline that discusses management indicates that timbering might be possible, although discouraged, even in areas designated "wild": "Generally, uses more intensive than grazing and hay production are incompatible with wild river classification.... Timber harvest in any river area will be conducted so as to avoid adverse impacts on the river area values." 47 Fed.Reg. 39,459 (Sept. 7, 1982). The joint guideline does not bar, as a matter of law, the proposed sale of burned timber in the South Fork area.