**Lilly MINOTTO, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

**No. 82–2174.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 6, 1983.

Decided July 19, 1983.

Edward C. Mengel, Jr., Philadelphia, Pa., for petitioner.

Raymond W. Fullerton, Asst. Gen. Counsel, Dept. of Agriculture, Washington, D.C., with whom James Michael Kelly, Associate Gen. Counsel, and Margaret M. Breinholt, Atty., Dept. of Agriculture, Washington, D.C., were on brief, for respondent. Terrence G. Jackson, Atty., Dept. of Agriculture, Washington, D.C., also entered an appearance for respondent.

Before EDWARDS, Circuit Judge, McGOWAN and MacKINNON, Senior Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

Petitioner Lilly Minotto seeks review of a final order issued by the Secretary of Agriculture wherein she was found to have been "responsibly connected" with an agricultural products marketing company which violated the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499a *et seq.*

(1976 & Supp. V 1981) (the Act).[1] Based upon this finding, Minotto was barred from employment with a Department licensee for two years. Petitioner asserts that the Secretary's conclusion is not supported by facts on the record as a whole. We agree. The petition for review is, therefore, granted and the decision of the Secretary is reversed.

## I.

Minotto was employed by Conte, Inc. (the Company), a wholly owned subsidiary of American Specialty Foods, Inc., which markets fresh fruits and vegetables and is, therefore, subject to the Act. In November 1980 the enforcement branch of the Department of Agriculture filed a complaint against Conte under section 499f of the Act, charging the Company with failure to make full and prompt payment for 250 lots of perishable agricultural commodities received during August and September, 1979. When the Company failed to answer the complaint, the agency obtained a default order. *In re Conte, Inc.,* 40 Agriculture Decisions 620 (1981).

After obtaining the order of liability, the Department of Agriculture notified Company officers and directors, including Minotto, that they were "responsibly connected" to the Company within the meaning of section 499h of the Act and therefore would be subject to employment sanctions.[2] The Chief of the Department's Regulatory Branch concluded that Minotto was "responsibly connected" solely because she was a corporate director and she had attended nine corporate board meetings. File PACA D–0042; Joint Appendix (JA) 47. Minotto disagreed with the determination and requested a hearing.[3]

The facts developed at the hearing are uncontested. Minotto was employed by Conte from 1974 until 1980 as a bookkeeper with secretarial and accounting duties. She had completed one year of post-high school business training and was twenty-three years of age when she began working for the Company. Although during her tenure Minotto was given additional clerical, bookkeeping, and accounting responsibilities, she remained an hourly employee.

In January 1976, Conte was restructured under a Chapter XI bankruptcy proceeding

---

1. The Perishable Agricultural Commodities Act regulates the shipment of perishable agricultural products in interstate and foreign commerce through a system of licensing and administrative supervision. As a precondition of doing business, merchants, dealers, and brokers in such commodities must obtain a license from the Secretary of Agriculture. Section 2 of the Act forbids licensees from engaging in certain enumerated unfair practices, including the failure to make prompt, full payment for commodities. An unfair practice subjects the licensee to liability for damages and to suspension or revocation of its license.

2. The Secretary is authorized to limit employment, within the agricultural industry, of individuals who violate the Act. The Act provides:

> (b) Except with the approval of the Secretary, no licensee shall employ any person, or any person who is or has been responsibly connected with any person—
> (1) whose license has been revoked or is currently suspended by order of the Secretary . . . .

7 U.S.C. § 499h (1976); and

> (9) The term "responsibly connected" means affiliated with a commission mer-

chant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association . . . .
*Id.* § 499a.

The Secretary may approve the reemployment of such "responsibly connected" person following the violating company's payment of a reparation award, or upon the individual's posting of a bond following one year of the employment sanction.

3. The terms of the Act do not expressly require a hearing, but in *Quinn v. Butz,* 510 F.2d 743 (D.C.Cir.1975), this court required the agency to provide "responsibly connected" persons with an opportunity to rebut the agency's charge. The agency has complied with this judicial directive by implementing regulations governing the proceedings and review applicable in a "responsibly connected" determination. 7 C.F.R. §§ 47.47–.68 (1983).

Neither party disputes that the "substantial evidence" test is the applicable standard of review. The hearing authorized by the regulations, and which was in fact provided to Minotto, was a formal, on-the-record adjudicatory proceeding. See *id.* §§ 47.58–.63. Therefore, the substantial evidence test is appropriate.

and Minotto was appointed to its newly created five-person Board of Directors.[4] Her election was solely for the convenience of the Company; because of her presence in the office, Minotto could be counted upon to attend Board meetings and to insure the availability of a quorum. The other four members of the Board were James L. Price, a director of the parent company, American Specialty Foods, and President of Conte; Samuel Schreffler, Secretary/Treasurer and later President of Conte; George McLaughlin; and Kenneth Kalligher, Vice-President of Conte. Minotto did not receive an increase in salary upon assuming a director's position, nor did she receive any stock as compensation for her new duties. Except to attend Board meetings, Minotto performed no additional work in conjunction with her appointment. During the four years of her directorship Minotto attended all nine Board meetings which were held. She never proposed any motions at these meetings, but is recorded as having voted in favor of all resolutions proposed. Minotto denied knowledge of the Company's transactions which gave rise to the underlying violations, and she asserted that such business was never discussed at Board meetings. The minutes of the Board meetings confirm her assertion.

Based upon this evidence, the Department's Hearing Officer held that Minotto was "responsibly connected" with Conte during the time period when the violations occurred. Decision, PACA RC 81–1005 (June 21, 1982); JA 102–11. Characterizing Minotto's directorship as being "more than nominal," the Officer reasoned that Minotto's "participation in the Board of Directors meetings" was the "critical issue" because her attendance assured the quorum necessary to enact resolutions dealing with the "well-being of the Company." Id. at 8; JA 109. The Hearing Officer found the mere fact that Minotto was a director to be dispositive, regardless of whether she exercised any real authority within the Company. Because she was found to be "responsi-

bly connected," Minotto was subject to the employment sanctions of the Act.

Minotto appealed, but the Department of Agriculture affirmed the Hearing Officer's decision. Decision, PACA RC 81–1005 (Aug. 6, 1982); JA 117. This petition for review followed.

## II.

As a "director" of a company which violated the Act, Minotto falls within the language of section 499a of the Act. However, that fact alone is not sufficient to render her automatically subject to the sanctions of the Act. In *Quinn v. Butz*, 510 F.2d 743 (D.C.Cir.1975), this court established that being a director, officer, or ten per cent stockholder was only *prima facie* evidence that one was "responsibly connected" to a company which had violated the Act. The *Quinn* court held the statute was not intended to establish absolute liability. A finding of liability under section 499h of the Act must be premised upon personal fault or the failure to "counteract or obviate the fault of others." *Id.* at 756.

At oral argument, counsel for the Department conceded that the Department's decision was not premised upon Minotto's failure to counteract the fault of others. Instead, the Department's decision was based upon its conclusion that Minotto was personally at fault. Conspicuously absent from the record evidence and from the Hearing Officer's findings of facts or conclusions, however, is *any* suggestion that Minotto knew or should have known of the Company's misdeeds. Her mere presence at Board meetings during which the illegal transactions were never discussed cannot be the basis for imputing personal knowledge to her. Such a conclusion would be the functional equivalent of an absolute liability standard which this court expressly rejected in *Quinn. See id.* The finding that an individual was "responsibly connected"

---

**4.** In December 1979, *after* the underlying violations by the Company were consumated, Minotto was appointed Assistant Secretary. In this capacity she was authorized to co-sign checks for the Company.

must be based upon evidence of an actual, significant nexus with the violating company. "[W]here the affiliation is purely nominal and the so-called [director] had no powers at all," the "responsibly connected" determination cannot stand. *Id.* at 756 n. 84.

The record in this case clearly establishes that Minotto was no more than a nominal director. She lacked both the training and the experience to be an active director. She had no real authority within the Company and simply acquiesced in the decisions made by the Company President, her boss. The nominal nature of her role at the Board meetings was attested to by both the former President of the Company and a fellow member of the Board; she had no policy or decision-making role. She was essentially a clerical employee.

Notwithstanding her designation as a director, it cannot be said that Minotto was "responsibly" affiliated with the Company. There is no evidence in the record to support the conclusion that Minotto knew or should have known of the Company's misdeeds. The fact that Minotto was an uncompensated, nominal director who attended Board meetings at the request of her employer does not support the conclusion that she was "responsibly connected" to the violating company within the meaning of the Act.

The petition for review is *granted* and the decision of the Department of Agriculture is *reversed.*

*Judgment accordingly.*