154 F.3d 1086
 98 Cal. Daily Op. Serv. 7044, 96 Daily Journal
D.A.R. 10,043,
98 Daily Journal D.A.R. 9738
Ernest MALDONADO, Petitioner,
v.
DEPARTMENT OF AGRICULTURE; United States of America, Respondents.
 No. 96-70657.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 2, 1997.
Decided Sept. 9, 1998.
 
 Joseph Choate, Jr., Choate & Choate, Los Angeles, California, for petitioner.
 Libbi J. Finelsen, Office of General Counsel, U.S. Dept. of Agriculture, Washington, D.C., for respondents.
 Petition to Review a Decision of the Department of Agriculture. D.C. No. PACA RC 94-1042.
 Before: SCHROEDER and KOZINSKI, Circuit Judges, and WHYTE,* District Judge.
 SCHROEDER, Circuit Judge:
 
 
 1
 Ernest Maldonado worked for decades in a Los Angeles produce company where he rose from a job loading and unloading trucks to the position of head of the vegetable department. In 1990, new owners purchased the company, looted it, and made Maldonado titular president during the company's collapse. Maldonado here seeks review of the Department of Agriculture's administrative order finding that he was "responsibly connected" to the company under the Perishable Agricultural Commodities Act ("PACA"), which prohibits him from working in the produce industry for a period of time without posting a bond. See 7 U.S.C. § 499h(b)(Supp.1998). We grant the petition and reverse the order because we hold that Maldonado satisfied the requirements of § 499a(b)(9), which provides that a person who is only a nominal officer and took no active part in the wrongdoing is not "responsibly connected" to a defaulting company. See 7 U.S.C. § 499a(b)(9) (Supp.1998).
 
 FACTS
 
 2
 Maldonado began working for W. Fay, the defaulting company, as a "swamper," loading and unloading trucks, in 1957. He advanced to delivering produce, then to salesperson and became head of the vegetable department in the late 1980s.
 
 
 3
 W. Fay was one of the oldest wholesale produce businesses in Los Angeles when, in November 1990, the owners sold all shares in the company to Hunter Acquisitions, Inc. At that time, David Dukesherer became CEO and his wife, Sharon M. Dukesherer, became president and secretary of W. Fay.
 
 
 4
 In 1992, a grower contacted Maldonado to tell him that the grower had not been paid. Maldonado approached Dukesherer, who suggested that Maldonado and some other employees invest in the company so that the farmers could be paid. Maldonado, along with two other employees, agreed. Maldonado refinanced his home and invested $40,000 in the company. Thereafter, Dukesherer's secretary started bringing to Maldonado for his signature various documents that listed him as "president."
 
 
 5
 Maldonado testified that his duties remained the same after he became "president." He continued to run the vegetable department. He did not open the mail or handle any of the cash of the business; he had no office of his own, and he did not discuss "business" with Dukesherer. Maldonado further testified that he never attended any corporate meetings.
 
 
 6
 Meanwhile, in September 1993, Dukesherer secretly opened a second business checking account. Dukesherer methodically transferred money from the original W. Fay business account to the secret account, depleting the company's assets. Dukesherer continued to cash checks on the original account even after W. Fay was in Chapter 7 bankruptcy proceedings.
 
 
 7
 In 1994, the Secretary of Agriculture ("the Agency") instituted proceedings under PACA to determine whether Maldonado was "responsibly connected" with W. Fay by virtue of his status as an officer at the time the entity was found to have violated PACA for failure to pay for produce purchases.
 
 
 8
 When the Secretary advised Maldonado that the Secretary had initially determined that Maldonado was "responsibly connected," Maldonado filed a petition for review by the Chief of the Regulatory Branch and requested an oral hearing. In September 1995, an oral hearing was held before a Presiding Officer ("PO") to determine the issue. The PO rendered his decision finding Maldonado "responsibly connected," and Maldonado filed a petition with the Administrator of Agricultural Marketing Service. The Administrator issued his Final Order, affirming the PO's decision. Maldonado petitions for review of the Final Order.
 
 DISCUSSION
 
 9
 PACA makes it unlawful "to fail or refuse truly and correctly to account and make full payment promptly in respect to any transaction in any [perishable agricultural] commodity to the person with whom such transaction is had...." 7 U.S.C. § 499b(4). The relevant statute pertaining to persons "responsibly connected" to the violating company was amended in 1995 to provide that "a person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not actively involved in the activities resulting in a violation of this chapter and that the person ... was only nominally a partner, officer, director, or shareholder of a violating licensee...." 7 U.S.C. § 499a(b)(9).
 
 
 10
 As to the first requirement in the statute, there is no evidence that Maldonado was "actively involved" in the transactions that resulted in the PACA violation. The violation in this case was W. Fay's failure to pay $19,590.75 for twelve shipments of mixed citrus from October 19, 1992 through February 26, 1993. Maldonado testified that he was not involved in that particular sale. Nor, according to Maldonado's testimony, did he generally make any of the decisions as to what bills got paid and when. Although Maldonado was authorized to co-sign checks, he did not participate in the fraudulent activities of the Dukesherers that resulted in money being siphoned from the firm to their pockets. He merely signed checks when he was asked to do so. His duties both before and after August 1992, when he was named president, were essentially the same: running the produce department.
 
 
 11
 Although the PO noted that Maldonado was aware that the company was not paying debts in 1992, and that he considered telling the growers to stop making shipments, it is not disputed that when he learned about the company's financial problems, he invested his own money into the firm so that the debts could be paid. Maldonado did not know his investment was futile because of Dukesherer's fraud. The government does not argue that Maldonado's knowledge that there were unpaid bills was sufficient to constitute active involvement in the company's defalcations that were the basis of the reparation order. The dissent's insistence that liability may be predicated on a "failure to counteract or obviate the fault of others" picks up on some language in D.C. Circuit cases that Congress rejected when it exempted nominal officers "not actively involved in the activities resulting in a violation...." 7 U.S.C. § 499a(b)(a).
 
 
 12
 As to the second requirement in the statute, it is clear from the facts that Maldonado "was only nominally a[n] ... officer." Here the Congress has adopted the standard articulated by the D.C. Circuit, and thus the D.C. Circuit's case law is instructive on this point. See Hart v. USDA, 112 F.3d 1228, 1230 (D.C.Cir.1997). Under that Circuit's decisional law "[i]n order to prove that one was only a nominal officer or director, one must establish that one lacked any 'actual, significant nexus with the violating company' and, therefore, neither 'knew [n]or should have known of the [c]ompany's misdeeds.' " Id. at 1231 (quoting Minotto v. USDA, 711 F.2d 406, 408-409 (D.C.Cir.1983)).
 
 
 13
 Our review of the Administrator's final order affirming the PO's decision reveals insufficient evidence to support the Agency's conclusion that Maldonado had such an "actual significant nexus with W. Fay Produce, Inc. at the time the firm was found to have violated the PACA." The evidence upon which the Agency relied showed Maldonado's position as president was only a nominal title. The PO noted that Maldonado had signed various corporation documents as president. The law is clear, however, that "an officer may be 'nominal' even though the corporate records, such as those relied on here by the Presiding Officer, make him out to be a real one." Bell v. USDA, 39 F.3d 1199, 1202 (D.C.Cir.1994).
 
 
 14
 The PO also relied on the fact that Maldonado was listed in corporate records as president, but that is not dispositive. In Quinn v. Butz, 510 F.2d 743, 752-53 (D.C.Cir.1975), the court held that although the petitioner was listed as vice president, he was only a nominal officer because neither his duties nor his salary changed, and he never had anything to do with policy or business decisions. Maldonado was in a similar position as an officer of W. Fay in name only. His duties never changed and he received no additional compensation as president of W. Fay. See Minotto, 711 F.2d at 408 (director that received no additional compensation for new position was a nominal director). In addition, Maldonado never attended any board meetings. See Quinn, 510 F.2d at 752; cf. Minotto, 711 F.2d at 408 (director who is present and votes at all board meetings is nominal because "[h]er election was solely for the convenience of the [c]ompany").
 
 
 15
 Moreover, Maldonado lacked the skill and training commensurate with his position as "president." The court in Minotto held that lack of training and experience is a factor in determining whether an individual should be considered "responsibly connected." See id. at 409. In that case, the petitioner was hired as a bookkeeper with secretarial and accounting duties. She had completed one year of post-high school business training and was twenty-three years of age when she began working for the company. Because the petitioner "lacked both the training and the experience to be an active director," and did not receive an increase in salary or stock as compensation, the court held she was not responsibly connected, notwithstanding the fact that she attended every board meeting and voted in favor of all resolutions proposed. See id. at 408-09. Maldonado has a sixth grade education and has held no other job outside W. Fay. Although he is knowledgeable about produce, he testified that he has no experience or training in management and revealed a lack of understanding of corporate structures.
 
 
 16
 Finally, although Maldonado had authority to sign checks on the company account, it was only as a co-signor. He was not aware of, and therefore, had no authority over the secret account. Moreover, he testified that he only signed a total of five checks. These facts indicate that Maldonado's authority to sign checks had nothing to do with corporate policy. See id. at 409 n. 4 (not responsibly connected despite authority to co-sign checks); cf. Bell, 39 F.3d at 1200.
 
 
 17
 For these reasons, we conclude that the Agency decision must be vacated because Maldonado was a nominal officer who was not "responsibly connected" to the defaulting company within the meaning of 7 U.S.C. § 499a(b)(9).
 
 
 18
 The petition for review is GRANTED, and the decision of the Department of Agriculture is REVERSED.
 
 KOZINSKI, Circuit Judge, dissenting:
 
 19
 The majority claims it is applying the D.C. Circuit's PACA caselaw, but those cases do not support the majority's conclusion. According to the D.C. Circuit, "[a] finding of liability under section 499h of [PACA] must be premised upon personal fault or the failure to 'counteract or obviate the fault of others.' " Minotto v. U.S. Dep't of Agriculture, 711 F.2d 406, 408 (D.C.Cir.1983) (quoting Quinn v. Butz, 510 F.2d 743, 756 (D.C.Cir.1975)). In Minotto, there was "[c]onspicuously absent from the record evidence and from the Hearing Officer's findings of facts or conclusions ... any suggestion that Minotto knew or should have known of the Company's misdeeds." Id.
 
 
 20
 By contrast, the Presiding Officer here found that Maldonado should have known of Dukesherer's wrongdoing, and that finding is well supported by the record. Maldonado himself testified that he was aware that some producers were not getting paid. Moreover, as head of the company's produce department, he was intimately familiar with the business and in a position to do something to prevent future harm. He could, for example, have warned producers not to throw fresh lettuce after wilted. Maldonado was known and trusted in the industry and his silence, in light of what he knew and should have known, may have lulled producers into a false sense of security. Minotto, on which the panel particularly relies, is of no help because there "the Department [of Agriculture] conceded that the Department's decision was not premised upon Minotto's failure to counteract the fault of others." Id. There is no such concession here.[1]
 
 
 21
 The majority's reliance on Bell v. Department of Agriculture, 39 F.3d 1199 (D.C.Cir.1994), is equally misplaced. Bell was a nominal officer because "[h]e never signed checks or agreements [and] never filed PACA license renewals." Id. at 1200. Maldonado admits to signing, as president, five checks, two PACA license renewal forms, and a corporate resolution authorizing W. Fay to file for Chapter 7 protection. This also distinguishes his conduct from Minotto's, who was authorized to write checks, but there is no indication that she actually did so. See Minotto, 711 F.2d at 408 n. 4. Nor was Maldonado quite as naive about corporate governance as the majority seems to believe. While Maldonado spent 5 pages of transcript denying that he even knew corporations had officers, he was finally forced to admit that he did know. The Presiding Officer could easily discount Maldonado's self-serving statements as a ploy.
 
 
 22
 The sum and substance of the D.C. Circuit's PACA caselaw is that no one will be held liable as a matter of strict liability. See Quinn, 510 F.2d at 756. Maldonado was not held liable based on strict liability; rather, in addition to being an officer, he had hands-on involvement in a key aspect of the business and failed to do what he could to prevent the harm. That Maldonado was also a victim is not as helpful to him as the majority seems to think. With his own money on the line, Maldonado had good reason not to notify producers or the Department of Agriculture that the company was failing to meet its obligations to producers. After all, any such disclosure might have brought the house of cards tumbling down, leading to an immediate loss of Maldonado's investment.
 
 
 23
 Maldonado presents a sympathetic case, but PACA is a remedial statute and we must enforce it strictly. The majority's misapplication is particularly troubling because it purports to adopt the D.C. Circuit's gloss on the statute, which was encoded in the 1995 amendments to PACA. Yet in our first decision interpreting the amended statute, the majority casts aside much of the D.C. Circuit's teaching; this despite the fact that the D.C. Circuit has shown no signs of disavowing that precedent, and indeed even cited it approvingly in their first post-amendment case. See n. 1, supra. Given the amount of agricultural business in the states of the Ninth Circuit, this conflict is no small matter.
 
 
 24
 There is ample evidence to support the Presiding Officer's findings, and under those findings it is clear that Maldonado was responsibly connected to W. Fay. We must affirm.
 
 
 
 *
 The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The majority holds that the 1995 amendments to PACA overrule Quinn, insofar as it premised liability on the officer's failure to counteract the wrongdoing of others. But the statutory passage the majority cites does not go so far. Section 499a(b)(9) precludes the imposition of liability on a nominal officer who is "not actively involved in the activities resulting in a violation." It does not exonerate someone like Maldonado who was actively involved in the conduct of the business and in a position to learn about the defalcation and do something about it. The D.C. Circuit has certainly recognized the continuing validity of Quinn, see Hart v. Department of Agriculture, 112 F.3d 1228, 1230-31 (D.C.Cir.1997); by holding otherwise the majority is creating a circuit conflict on this issue