**Michael NORINSBERG, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE and United States of America, Respondents**

No. 98–1065.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 6, 1998.

Decided Dec. 22, 1998.

Stephen P. McCarron argued the cause for the petitioner.

Stephen M. Reilly, Attorney, United States Department of Agriculture, argued the cause for the respondents. James Michael Kelly, Associate General Counsel, and Margaret M. Breinholt, Acting Assistant General Counsel, United States Department of Agriculture, were on brief for respondents.

Before: WALD, WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Michael Norinsberg (Michael or petitioner) petitions for review of the determination by the United States Department of Agriculture (Agriculture or Agency) that he was "responsibly connected" with the Norinsberg Corporation (Corporation) at the time it violated the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a et seq. (PACA or Act), challenging Agriculture's interpretation of the term "actively involved" as used in 7 U.S.C. § 499a(b)(9). Because Agriculture inadequately articulated the factors relevant in interpreting "actively involved," we grant the petition for review and remand the case for further explanation.

I.

A. Statutory Background

In 1934 the Congress amended PACA to provide that the Agriculture Secretary could with notice revoke the license of any "commission merchant, dealer, or broker" that employed an individual "who was responsibly connected with any firm, partnership, association, or corporation whose license has been revoked within one year of the date prior to such notice." Pub.L. No. 73–159, ch. 120, § 5, 48 Stat. 586.[1] The Congress, however, did not at that time define "responsibly connected." In 1962, however, concerned about "possible confusion" regarding the interpre-

tation of "responsibly connected," see Amendments to the Perishable Agricultural Commodities Act, 1930, H.R.Rep. No. 87–1546, at 4 (1962), the Congress amended the Act to define "responsibly connected" to mean "affiliated or connected with a commission merchant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association." Pub.L. No. 87–725, § 2, 76 Stat. 673 (codified as amended at 7 U.S.C. § 499a(b)(9)).

Over time courts adopted one of two approaches in interpreting "responsibly connected." Most adopted a per se rule, finding an individual responsibly connected if he fit one of the statutory categories. See, e.g., Faour v. United States Dep't of Agric., 985 F.2d 217, 220 (5th Cir.1993) ("The statute does not contemplate a defense that allows a person to show that even though he fits into one of the three categories, he never had enough actual authority to be considered truly responsibly connected."); Pupillo v. United States, 755 F.2d 638, 643–44 (8th Cir.1985) ("In sum, we find that a per se analysis of Section 499a(9) better accomplishes Congress' objective."); Birkenfield v. United States, 369 F.2d 491, 494 (3d Cir.1966) ("Obviously, as interpreted by the Department, the 1962 amendment was intended to establish 'per se' exclusionary standards.... We agree with the Department."); see also Zwick v. Freeman, 373 F.2d 110, 119 (2d Cir.) (citing per se standard with approval), cert. denied, 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967). On the other hand, this circuit adopted a rebuttable presumption test. See Quinn v. Butz, 510 F.2d 743 (D.C.Cir.1975). In Bell v. Department of Agric., 39 F.3d 1199 (D.C.Cir.1994), we noted two sets of circumstances in which a person could rebut the presumption that he was responsibly connected if he fell into one of the section 499a(b)(9) categories:

> (1) whose license has been revoked or is currently suspended by order of the Secretary;
> ...
> 7 U.S.C. § 499h(b)

---

1. The employment ban that began with the 1934 amendment currently provides in part:

   Except with the approval of the Secretary, no licensee shall employ any person, or any person who is or has been responsibly connected with any person—

The first involves cases in which the violator, although formally a corporation, is essentially an alter ego of its owners, so dominated as "to negate its separate personality." Thus, in *Quinn*, we indicated that an officer might meet this test by showing that the sole stockholder of the corporation " 'effectively retained the decision making power in all aspects of corporate decision making' " so that the company was not really a corporation within the meaning of 7 U.S.C. § 499a(9), but rather a sole proprietorship. . . .

The second way of rebutting the presumption is for the petitioner to prove that at the time of the violations he was only a *nominal* officer, director, or shareholder. This he could establish by proving that he lacked "an actual, significant nexus with the violating company." Where responsibility was not based on the individual's "personal fault" it would have to be based at least on his "failure to 'counteract or obviate the fault of others.' "

*Id.* at 1201 (citations omitted).

■ The circuit split existed until 1995 when the Congress amended the definition of responsibly connected to "permit individuals who are responsibly connected . . . the opportunity to demonstrate that they were not responsible for the specific violation," Perishable Agriculture Commodities Act Amendments of 1995, H.R.Rep. No. 104–207, at 11 (1995). The 1995 amendment added the following:

A person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not *actively involved* in the activities resulting in a violation of this chapter *and* that the person either was only nominally a partner, officer, director, or shareholder of a violating licensee or entity subject to license or was not an owner of a violating licensee or entity subject to license which was the alter ego of its owners.

7 U.S.C. § 499a(b)(9) (emphasis added). According to the amendment, Agriculture must first determine if an individual falls within one of the three statutory classifications. If so, the burden shifts to the individual to demonstrate that he was not actively involved and that he was either only a nominal officer or not an owner of a licensee within the meaning of the statute.[2]

### B. Factual Background

Robert Norinsberg, the petitioner's father, became the president of the Corporation in 1974, succeeding the petitioner's grandfather. Between April 1991 and February 1992, the Corporation "failed to make full payment promptly to 10 sellers of the agreed purchase prices of 46 lots of perishable agricultural commodities, in the total amount of $424,-913.75." Joint Appendix (JA) 26. Agriculture found that this conduct constituted "willful, flagrant, and repeated violations of section 2(4) of the PACA,"[3] JA 26, and, accordingly, in 1993 it revoked the Corporation's PACA license. On review we denied the Corporation's petition. *Norinsberg Corp. v. Department of Agri.*, 47 F.3d 1224, 1230 (D.C.Cir.1995), *cert. denied*, 516 U.S. 974, 116 S.Ct. 474, 133 L.Ed.2d 403 (1995).

Michael had earlier entered the family business upon his college graduation in 1986. While Robert Norinsberg anticipated that Michael would eventually succeed him, Michael started as an assistant to the Corporation's sales manager and earned between $25,000 and $27,000 annually. Also in 1986, the Corporation issued Michael 150 shares of common stock, which represented 15 per cent of the outstanding shares of common stock. Robert Norinsberg retained the remaining common stock (850 shares).[4] Even-

---

2. A licensee includes any "individual[ ], partnership[ ], corporation[ ] [or] association[ ]," 7 U.S.C. § 499a(b)(1), "carrying on the business of a commission merchant, dealer, or broker," *id.* § 499c(a).

3. Section 2(4) of PACA makes it unlawful to "fail or refuse truly and correctly to make full payment promptly." 7 U.S.C. § 499b(4). The applicable regulations define "promptly" to mean

"within 10 days after the day on which the produce is accepted." 7 C.F.R. § 46.2(aa)(5). The violation must be "willful" to support revocation. 5 U.S.C. § 558(c).

4. Of the 4,035 shares of preferred stock issued by the Corporation, Michael's grandfather's estate owned 2,535 shares and Susan Norinsberg, Michael's grandmother, owned the remaining 1,500 shares. When all of the stock was tallied, then,

tually Robert Norinsberg appointed Michael secretary and treasurer of the Corporation for "administrative convenience" because he "wanted corporate checks and other documents signed with the Norinsberg name and [Michael] was available." JA 50. Nevertheless Michael's salary remained at the $25–27,000 level. Between May 1991 and February 1992, Michael signed nine of 929 checks from one account and seven of 267 from a second account. Twelve checks, totaling $51,369.60, were payable to Robert Norinsberg; one check for $5,359 was payable to Susan Norinsberg; one check for $3,000 was payable to Robert Norinsberg's housekeeper; and two checks totaling $115,966.27 were issued to the Shoreham Cooperative, a company partially owned by Robert Norinsberg, for produce sold to the Corporation. JA 31. At the time he signed the checks, Michael admitted that he knew that the Corporation was not making full and prompt payment to its suppliers. Although Michael also admitted that signing the checks troubled him, he did not refuse to sign. JA 235.

Using Michael's position as an officer and shareholder as the basis for his determination, Agriculture's PACA Branch Chief, Fruit and Vegetable Division (Branch Chief), issued an initial determination that Michael was responsibly connected with the Corporation at the time it violated PACA. JA 66–67. Michael sought review by an administrative law judge (ALJ). After a hearing, the ALJ, applying the amended definition of responsibly connected, concluded that the Congress had adopted this circuit's rebuttable presumption test and under that test Michael was not responsibly connected because, in his view, both the statute and this circuit contemplated "active participation at a manage-

rial level in decision making activities that resulted in the violation." *In re Norinsberg,* PACA–APP Docket No. 96–0009 (Decision and Order May 6, 1998), JA 64.[5] The ALJ therefore reversed the Branch Chief's finding that Michael was responsibly connected to the Corporation.

The Branch Chief appealed the ALJ's determination to a judicial officer (JO), arguing that the ALJ had misapplied this circuit's test. The JO disagreed with the ALJ, finding that neither the statute nor the relevant legislative history contemplated managerial decision making. JA 43. In doing so, the JO expressly concluded that the amendment did not codify this circuit's law. JA 42–43.[6] The JO first noted that the checks Michael signed had already been filled out when they were presented to him for signature and that he signed the checks only when "Robert M. Norinsberg was unavailable and at Robert M. Norinsberg's direction." JA 42. The JO also noted that the "Petitioner knew at the time that he signed [the checks] that The Norinsberg Corporation was not making full payment promptly to produce creditors, and Petitioner was troubled by his signing the checks." *Id.* Without further elaboration, the JO concluded that Michael was "actively involved" within the meaning of the statute because "the act of signing checks is active involvement in an activity, and in this instance, the activity resulted in The Norinsberg Corporation's violations of PACA." JA 44. As Michael conceded that he was an officer, albeit a nominal one, the JO found Michael responsibly connected with the Corporation because, as an "actively involved" officer, Michael had failed to demonstrate by a preponderance of the evidence that he was

Michael owned less than three per cent. *In re Norinsberg,* PACA–APP Docket No.96–0009 (Decision and Order Oct. 21, 1997), JA 27.

5. The ALJ concluded that Michael had established both that he was not actively involved and that he was only a nominal officer.

6. The JO stated:
While [the 1995 amendment] generally incorporated the rebuttable presumption standard followed by the United States Court of Appeals for the District of Columbia circuit into the definition of responsibly connected ... District

of Columbia circuit case law does not premise responsible connection with a PACA violator on active involvement ... Instead the United States Court of Appeals for the District of Columbia cases decided prior to the enactment of [the 1995 amendment] premise responsible connection with a PACA violator upon personal fault or the failure to counteract or obviate the fault of others. Thus, I do not rely on District of Columbia circuit case law regarding the issue of Petitioner's active involvement. JA 40–41.

not responsibly connected with the Corporation at the time it violated PACA.

Michael petitioned for reconsideration, arguing that the JO had retroactively applied the amended statute to him. The JO denied the petition on the ground that Michael had failed to object timely. *In re Norinsberg,* PACA–APP Docket No. 96–0009 (Order Denying Petition for Reconsideration Jan. 26, 1998), JA 15. Michael then petitioned this court for review.

## II.

■ We review the Agency's interpretation of PACA under the familiar framework described in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, we determine if "Congress has directly spoken to the precise question at issue." 467 U.S. at 842, 104 S.Ct. 2778. If it has, our inquiry is at an end. "If, however, the court determines Congress has not directly addressed the precise question at issue ... the question for the court is whether the agency's [interpretation] is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. We cannot, however, "exercise [our] duty of review unless [we] are advised of the considerations underlying the action under review," *SEC v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943). In cases where " 'we are at a loss to know what kind of standard [the agency] is applying or how it is applying that standard to this record,' " *Checkosky v. SEC (Checkosky II),* 139 F.3d 221, 225 (D.C.Cir.1998) (quoting *United Food & Commercial Workers Int'l Union v. NLRB,* 880 F.2d 1422, 1435–36 (D.C.Cir.1989)), but where the "agency's failure to state its reasoning or to adopt an intelligible decisional standard is [not] so glaring that we can declare with confidence that the agency" erred, *Checkosky v. SEC (Checkosky I),* 23 F.3d 452, 463 (D.C.Cir. 1994) (Silberman, J., concurring), *appeal after remand,* 139 F.3d 221 (D.C.Cir.1998), the proper course is to remand to the agency for it to enunciate the standard. *See, e.g., id.* at 462 (Silberman, J., concurring) ("Absent such clarity, the proper course, one that we follow

today, is to remand so as to afford the agency an opportunity to set forth its view in a manner that would permit reasoned judicial review."); *United Food & Commercial Workers,* 880 F.2d at 1436 (remanding because "the decision in its current form fails to reflect the reasoned decisionmaking required of administrative agencies"), *appeal after remand,* 1 F.3d 24 (D.C.Cir.1993), *and cert. granted* 511 U.S. 1016, 114 S.Ct. 1395, 128 L.Ed.2d 69 (1994), *and cert. dismissed,* 511 U.S. 1138, 114 S.Ct. 2157, 128 L.Ed.2d 882 (1994). We believe that this case requires such treatment.

■ As often happens, each party contends that the Congress has spoken and resolved the question in its favor. *See, e.g., Alabama Power Co. v. FERC,* 160 F.3d 7, 10–11, 1998 WL 785622 at *4 (D.C.Cir. 1998). Contrary to Agriculture's position, however, the term "actively involved" does not have an unambiguous meaning. The lack of clarity is amply demonstrated not only by the agency officials' conflicting views on whether or not "actively involved" requires "managerial decision making," JA 43, but also by their lack of agreement over whether the amendment codified this circuit's precedent of "personal fault" or even what our precedent required. On the other hand the petitioner is wrong in asserting that the Congress "clearly" intended to adopt our precedent as set forth in our opinions in *Quinn,* 510 F.2d at 752–56, *Minotto v. United States Dep't of Agriculture,* 711 F.2d 406, 408–09 (D.C.Cir.1983), and *Bell,* 39 F.3d at 1201–05. First, the statutory language does not expressly so state. While we agree with the petitioner that his burden of demonstrating that he "either was only nominally a partner, officer, director, or shareholder of a violating licensee or entity subject to license or was not an owner of a violating licensee or entity subject to license which was the alter ego of its owners" mirrors part of our test, *see Maldonado v. Department of Agric.,* 154 F.3d 1086, 1088 (9th Cir.1998), it is far from clear that, by using the term "actively involved," the Congress also intended to incorporate our "personal fault" requirement.[7]

---

7. The personal fault factor requires an " 'actual

and significant nexus with the violating compa-

Had the Congress intended to do so, it could have done so expressly. *Cf. Oneida Tribe of Indians v. Wisconsin,* 951 F.2d 757, 762 (7th Cir.1991) (noting that Congress's different wording from past indicates intent that new word has different meaning). Nor does the limited legislative history address the issue. Congressional desire that "individuals who are not responsibly connected" have "the opportunity to demonstrate that they were not responsible for the specific violation," H.R.Rep. No. 104–207, at 11, does not necessarily demonstrate such an intent. As the Congress has not spoken to the precise question, we must take the second *Chevron* step and determine if Agriculture's interpretation is reasonable.

The JO's opinion provides virtually no standard for us to examine. Agriculture's argument that each case requires a fact-specific determination does not excuse its failure to provide *any* standard. *See Philadelphia Gas Works v. FERC,* 989 F.2d 1246, 1251 (D.C.Cir.1993) ("For [the agency] to utter the words 'unique facts and circumstances' and 'equity' as it did here, as a wand waved over undifferentiated porridge of facts, leaves regulated parties and a reviewing court completely in the dark."). The JO makes only two points in interpreting "actively involved." We know only that "active participation in managerial decision making" is not required and that writing checks standing alone *may* be sufficient.[8] JA 42–44. At oral argument, Agriculture suggested that, while signing checks was sufficient, mailing them was not. The JO, however, provides no principled way to distinguish the two. Both could amount to "active involvement in an activity" that resulted in the violation. JA 44. Moreover, the JO's

opinion does not indicate clearly whether a scienter requirement exists. For example, its language that Michael signed the checks and was therefore actively involved does not necessarily suggest a scienter requirement. In another part of his opinion, however, he indicates that an individual must *knowingly* participate in the PACA violation to be responsibly connected. For example, the JO specifically notes Michael's knowledge of the Corporation's financial problems and the fact that Michael was troubled by signing the checks—both irrelevant if uninformed check signing alone constitutes active involvement.[9] JA 42.

■ As we are unable to determine what, if any, standard the JO applied, we cannot determine if Agriculture's interpretation is a permissible one. Accordingly, we must remand to Agriculture to articulate a standard we can review in an informed manner. In doing so, we express no opinion on the merits of the case.[10] While retroactivity issues may arise depending on whether, and how, the enunciated standard may differ from our precedent, any retroactivity analysis is premature because we do not know now what standard Agriculture will adopt. This issue is properly addressed, if at all, on remand in accordance with the holdings in *Landgraf v. USI Film Prods.,* 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and *DIRECTV, Inc. v. FCC,* 110 F.3d 816, 826 (D.C.Cir.1997). We therefore grant the petition for review and remand to the Agency for it to explain its decision.

*So ordered.*

---

ny,' " *Bell,* 39 F.3d at 1201 (quoting *Minotto,* 711 F.2d at 409), to support a "responsibly connected" determination. "Where responsibility was not based on the individual's 'personal fault,' " it must "be based at least on his 'failure to "counteract or obviate the fault of others." ' " *Id.* (citations omitted)

8. The Ninth Circuit has held that check writing alone is insufficient to constitute active involvement. *Maldonado,* 154 F.3d at 1088.

9. Petitioner *knew* at the time that he signed these 14 checks that The Norinsberg Corporation was not making full payment promptly to produce creditors, and Petitioner was troubled by his signing checks made payable to Robert M. Norinsberg ...

JA 42 (emphasis added).

10. We can, and do, however, uphold Agriculture's conclusion that Michael was only a nominal officer.