BROWN, Circuit Judge,
dissenting:
The court vacates the Judicial Officer’s determination that Taylor and Finberg were responsibly connected to Fresh America because my colleagues believe the Judicial Officer “misapplied” our “actual, significant nexus” test. Maj. Op. 615. I respectfully disagree. It is the court that misapplies the test in two respects: First, the court fails to defer to the Judicial Officer’s legitimate focus on Taylor and Finberg’s actual knowledge of their company’s violations, in combination with other relevant indicators of their “responsibly connected” status, even though we have previously suggested such knowledge may be dispositive. Second, the court makes “power and authority” the sine qua non of responsible connection to the PACA-violating company, even though we have previously denied such a requirement.
I
The Judicial Officer found that Taylor and Finberg were “responsibly connected” to Fresh America under the “actual, significant nexus” test, in part because “they knew, or should have known, about the violation being committed and failed to counteract or obviate the fault of others.” Judicial Officer Decision at 13-14, 1 J.A. 19-20. Specifically, the Judicial Officer found, “Ms. Taylor and Mr. Finberg knew of Fresh America Corp.’s financial difficulties. Although they told the board of directors of the prompt payment provisions of the PACA, they failed to convince the board of directors to comply with the provisions of the PACA.” Id. at 14, 1 J.A. 20. The record amply supports this finding. Finberg testified that at one point he called a meeting of the board without the chairman’s permission, and he and Taylor *619 talked to the board about Fresh America’s late produce payments for “ten or fifteen minutes.” Hearing Tr. (Jan. 30, 2008) at 813, 1 J.A. 289. Taylor testified that she discussed “PACA payables” with Hollinger, but he responded, “PACA people [who] want to get paid in ... 30 days” were “crybabies.” Id. at 545, 1 J.A. 215. She recalled that when a $5 million investment came in, it was made clear “that additional money ... was not to be used to pay down PACA payables.” Id. at 546, 1 J.A. 216.
Contrary to the court’s suggestion, the Judicial Officer did not hold that “mere knowledge of PACA violations [can] turn a nominal officer into a full-fledged one.” Maj. Op. 617. We need not decide whether knowledge of company wrongdoing is sufficient by itself, because the Judicial Officer also relied in part on the officers’ high levels of compensation — a detail the court does not mention. Judicial Officer Decision at 11-12,1 J.A. 17-18. The Judicial Officer found Taylor and Finberg earned salaries of $175,000 and $145,000, respectively, and compensation packages that included “bonus potential, stock options, and other ‘fringe benefits.’ ” Id. Compensation is a relevant consideration under the “actual, significant nexus” test. See Minotto v. USDA 711 F.2d 406, 408-09 (D.C.Cir.1983).
Moreover, the Judicial Officer expressly considered Taylor and Finberg’s “experience, training, and education,” Judicial Officer Decision at 13, 1 J.A. 19, which were consistent with genuine officers’. Id. at 10-13, 1 J.A. 16-19. Like compensation, professional qualifications are relevant to the “actual, significant nexus” test. See Veg-Mix, Inc. v. USDA 832 F.2d 601, 612 (D.C.Cir.1987) (“[The officer’s] legal training put him on notice of the responsibilities of a corporate director.... Thus his case is easily distinguishable from those of the nominal officer and corporate director in Quinn and Minotto, who were unsophisticated persons employed by the wrongdoers.”); Minotto, 711 F.2d at 409 (reversing the Department’s “responsibly connected” determination because, among other reasons, the so-called officer “lacked both the training and the experience to be an active director”).
Taylor is a certified public accountant •with prior experience as a “chief financial officer and vice president of finance and administration” at The Great Train Store, a company she helped to take public. Immediately before coming to Fresh America, she worked with the CEO of another troubled company, Intellisys Group, to get it refinanced. When Intellisys was purchased by another company, Taylor stayed on to help it through the transition. Judicial Officer Decision at 11, 1 J.A. 17.
Finberg was also well qualified to serve as an officer. He rose up through the ranks of Fresh America over several years, starting with summer jobs at its predecessor company. While still in college, Finberg worked full-time as general manager of two locations. After graduating, Finberg earned a series of promotions, serving variously as corporate liaison with the company’s primary customer, director of customer service, director of national programs, and general manager of a distribution center. Only after gaining this leadership experience was Finberg elevated to vice president of sales and marketing, and eventually vice president of business development. Id. at 12, 1 J.A. 18.
This case therefore presents the question whether the Department’s “responsibly connected” determination is an arbitrary and capricious application of the “actual, significant nexus” test when the officer has actual knowledge of her company’s PACA violations and a salary and résumé in keeping with her title. I think not.
*620 We have previously recognized that an officer’s knowledge of her company’s PACA violations may be decisive under the “actual, significant nexus” test. In Bell v. USDA, the possibility that knowledge of company wrongdoing might confer “responsibly connected” status on an otherwise nominal “officer” led us to remand the Department’s decision “for further consideration.” 39 F.3d 1199, 1202 (D.C.Cir.1994). Bell was a produce salesman who performed no duties “that can be specifically attributed to his being vice-president.” Id. at 1200. He had heard, however, “that some of the company’s checks had bounced.” Id. at 1200. We suggested that even where the employee was dubbed an “officer” only “for the administrative convenience of the company” and even where he “never participated in the formal decisionmaking structures of the corporation,” the Department could find him “responsibly connected” by virtue of his knowledge of the company’s PACA violations. 39 F.3d at 1204. Although the Judicial Officer in Bell had made no finding about Bell’s knowledge, we observed “Bell’s awareness of some company wrongdoing may provide a distinction between this case and Quinn and Minotto.” Id. at 1204. We rejected the Department’s litigation position that under our prior cases “ignorance of company wrongdoing is a sine qua non of a finding that an officer’s or director’s relation to the corporate licensee was nominal,” id., but we implied that the Department could reasonably interpret some kinds of knowledge as establishing responsible connection per se, and asked the Department on remand to “formulate some principle delineating the role of differing degrees of knowledge of general corporate difficulties, or of ‘transactions which gave rise to the underlying violations’, or of the violations themselves, consistent with our cases.” Id. at 1204-05.
Although the Judicial Officer in this case did not set out the full taxonomy we requested in Bell, he did make an acceptable judgment about how to treat “knowledge ... of the violations themselves.” Id. Remember, Taylor and Finberg were found to have actual — not just constructive— knowledge of the PACA violations. The Judicial Officer said that when Taylor and Finberg “failed to convince the board of directors to comply with the provisions of PACA,” their “only option to avoid a responsibly connected determination was to resign as officers of Fresh America.” Judicial Officer Decision at 14, 1 J.A. 20. In other words, direct knowledge of a PACA violation, in the mind of an “officer” whose compensation, “experience, training, and education” are commensurate with the title, constitutes “responsible connection” to the violating company.
The court is hard-pressed to call this an unreasonable interpretation of the statute, especially since we have stated an even harsher rule in dicta. Hart v. USDA, 112 F.3d 1228, 1231. (D.C.Cir.1997) (“In order to prove that one was only a nominal officer or director, one must establish that one lacked any ‘actual, significant nexus with the violating company’ and, therefore, neither ‘knew nor should have known of the company’s misdeeds.’ ” (emphasis added) (quoting Minotto, 711 F.2d at 408-09)). The Judicial Officer’s remedy is certainly “consistent with our cases.” Bell, 39 F.3d at 1204-05. In fact, it comes straight from Martino v. USDA:
“The fact that an individual has not exercised ‘real’ authority in the sanctioned company is not controlling: certainly the individual could have resigned as an officer and director.... It was his free choice not to do so. Having made that choice, the appellant[s] assumed the burdens imposed by the Act.”
801 F.2d 1410, 1414 (D.C.Cir.1986) (quoting Birkenfield v. United States, 369 F.2d 491, 494-95 (3d Cir.1966)).
*621 II
The court recognizes that an officer’s knowledge of his company’s PACA violations is relevant to whether he is responsibly connected, Maj. Op. 616, but concludes that it cannot be dispositive because “actual power and authority are the crux of the nominal officer inquiry,” Id. at 617. This turns the doctrine on its head. Under our case law, “the crucial inquiry is whether an individual has an ‘actual, significant nexus with the violating company,’ rather than whether the individual has exercised real authority.” Veg-Mix, 832 F.2d at 611. In other words, “[t]he fact that an individual has not exercised ‘real’ authority in the sanctioned company is not controlling.” Martino, 801 F.2d at 1414. The court now contradicts these statements by superimposing a “power and authority” requirement on the “actual, significant nexus” test.
Until today, that test contained no such requirement. Instead, managerial control was a sufficient — but not necessary — indicator of the requisite nexus with the violating company. See Siegel v. Lyng, 851 F.2d 412, 417 (D.C.Cir.1988). We have recognized an officer may be responsibly connected to a violating company in multiple ways, of which real managerial power is only one. For example, a minority shareholder may not have actual power or authority to prevent (or even discover) the company’s PACA violations, but our cases have approved a sort of strict liability for so-called “officers” who hold a certain percentage of the violating company’s stock. See Veg-Mix, Inc. v. USDA, 832 F.2d 601, 611 (D.C.Cir.1987) (“In Martino, we found that ownership interest of 22.2 percent of the violating company’s stock was enough support for a finding of responsible connection.” (citing 801 F.2d at 1414)).
Even if the court’s new “power and authority” test were one reasonable interpretation of the statute, it is not the interpretation employed by the Judicial Officer in this case, nor is it required by our precedent. After telling the Department it could find at least some kinds of knowledge of company wrongdoing to be dispositive evidence of an officer’s “actual, significant nexus” to the violating company, see Bell, 39 F.3d at 1204-05, we cannot now declare arbitrary and capricious the Judicial Officer’s decision based on Taylor and Finberg’s actual knowledge of Fresh America’s consummated PACA violations, along with compensation and qualifications commensurate with the officers’ titles. We must defer to the Department’s reasonable interpretation. See Coosemans Specialties, Inc. v. USDA, 482 F.3d 560, 564 (D.C.Cir.2007).
Ill
I do not mean to suggest the Department is bound forever to apply the “actual, significant nexus” test. We have previously indicated the 1995 amendment to 7 U.S.C. § 499a(b)(9) might call for different criteria. See Norinsberg v. USDA, 162 F.3d 1194, 1199 (D.C.Cir.1998). Perhaps, we could have viewed Kleiman & Hochberg, Inc. v. USDA, 497 F.3d 681 (D.C.Cir.2007), as a paradigm shift rendering the old test obsolete. Instead, the court treats that case as discerning a “power and authority” requirement in the “actual, significant nexus” test even though we neither mentioned that test nor suggested the officer’s managerial control was the cause-in-fact — much less a necessary condition — of his responsible connection to the company. See 497 F.3d at 692. He also owned 31.6 percent of the company’s stock, id., which is more than “enough support for a finding of responsible connection,” Veg-Mix, Inc., 832 F.2d at 611. I have no objection in principle to a demand for evidence of “power and authority.” But the Judicial Officer in this case explicitly employed the “actual, significant nexus” test, Judicial *622 Officer Decision at 13, 1 J.A. 19, and neither the parties nor my colleagues have seen fit to challenge its applicability.[1] If the “actual, significant nexus” test applies, as the court holds it does, the Judicial Officer reasonably determined Taylor and Finberg’s direct knowledge of their company’s PACA violations, combined with their officer-appropriate salaries and qualifications, makes them responsibly connected to the violating company. Only if that test does not apply may a finding of “power and authority” be required instead. We cannot have it both ways.

. We have the authority to consider the propriety of the Department’s continued application of the “actual, significant nexus” test even if the parties do not object. "[T]he appellate court ... always possesses discretion to reach an otherwise waived issue logically 'antecedent to and ultimately dispositive of the dispute before it.' " Crocker v. Piedmont Aviation, 49 F.3d 735, 740 (D.C.Cir.1995) (quoting United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, 508 U.S. 439, 447, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993)).